# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00663-CV

**Albert Hawkins, Executive Commissioner of the Texas Health and Human Services Commission; the Texas Health and Human Services Commission; Anne Sapp, acting Commissioner of the Texas Department of Human Services; and the Texas Department of Human Services, Appellants**

**v.**

**El Paso First Health Plans, Inc. and Community Health Choice, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN303778, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## O P I N I O N

This appeal arises from a dispute about whether the Texas Health and Human Services Commission is responsible for disenrolling underweight newborns from the appellees' managed care plans because the newborns are ineligible to participate and/or be mandatorily enrolled in the appellees' plans based on the newborns' eligibility to receive supplemental security income (SSI) benefits.

Appellees Community Health Choice and El Paso First Health Plans are managed care organizations (MCOs)[1] that have contracts with the Commission to provide healthcare services

---

[1] A managed care organization (MCO) is a type of health maintenance organization (HMO) "in which the overall care of a patient is coordinated by or through a single provider or organization." 1 Tex. Admin. Code § 353.2(36) (2006).

to low-income Texans participating in the Medicaid program and the Children's Health Insurance Program (CHIP). The MCOs sued the Commission and its Executive Commissioner, Albert Hawkins,[2] seeking declaratory and injunctive relief requiring the Commission to retroactively disenroll certain Medicaid and CHIP beneficiaries from the MCOs' plans based on the beneficiaries' SSI-eligibility. The Commission filed a plea to the jurisdiction asserting that it was protected from suit by sovereign immunity, and the MCOs moved for summary judgment on their requests for declaratory and injunctive relief. After conducting a hearing on both the summary judgment motion and the plea to the jurisdiction, the trial court issued a final judgment denying the Commission's plea and the MCOs' request for an injunction[3] but granting declaratory relief in favor of the MCOs. The Commission now appeals, claiming that the trial court erred in denying its plea to the jurisdiction and that the declarations entered by the trial court are in error. We will affirm.

## BACKGROUND

The Texas Health and Human Services Commission is the state agency responsible for administering and supervising both the Medicaid and CHIP programs.[4] *See* 42 U.S.C.A. § 1396a(a) (West Supp. 2006), §§ 1396e, 1396u-2 (West 2003) (relevant provisions of Social

---

[2] At the time of suit, the task of determining Medicaid eligibility had been delegated from the Texas Health and Human Services Commission to the Texas Department of Human Services, with Anne Sapp acting as its Commissioner. Thus, the Department and Sapp were also named as defendants. As of September 1, 2004, however, the Department ceased to exist. Because the Commission, led by Hawkins, is now the sole state agency responsible for administering the Medicaid and CHIP programs in Texas, we will collectively refer to appellants as "the Commission."

[3] The denial of injunctive relief was not raised as an issue on appeal.

[4] For convenience, we cite to the current version of statutes and rules as long as no substantive amendment relevant to this appeal has been made since this case was originally filed.

2

Security Act related to state Medicaid plan); 42 U.S.C.A. §§ 1397bb, 1397jj (West 2003) (same, related to CHIP); 42 C.F.R. §§ 430.0, 431.10 (2005) (administrative guidelines promulgated by federal Secretary related to Commission's responsibilities to supervise Medicaid programs), §§ 457.1, 457.40 (2005) (same, related to CHIP); Tex. Gov't Code Ann. § 531.0055(b) (West 2004) (Commission's general responsibility for administration of Medicaid and CHIP programs), § 531.021 (West Supp. 2006) (Commission's powers and duties relating to Medicaid); Tex. Health & Safety Code Ann. § 62.051 (West 2001) (Commission's duties regarding CHIP); Tex. Hum. Res. Code Ann. §§ 22.0001, 22.002 (West 2001) (general responsibilities for administering assistance programs to needy individuals), § 32.021 (West Supp. 2006) (Commission's administration of all medical assistance programs for needy individuals authorized by federal law). The Commission contracts with the MCOs to provide managed care services for Medicaid and CHIP beneficiaries. Community Health Choice is a Medicaid MCO, and El Paso First is a CHIP MCO.

In order for the Commission to contract with a MCO for the provision of managed care services, the Commission must obtain a "section 1915(b) waiver" from the United States Secretary of Health and Human Services. *See* 42 U.S.C.A. § 1396n(b) (West Supp. 2006) (authorizing waiver); 42 C.F.R. § 431.55 (explaining section 1915(b) waivers). Such a waiver will only be approved if the application demonstrates that the "capitation rates" paid to the MCOs will be cost-effective. Under the contracts with the Commission, the MCOs are obligated to pay for services provided to beneficiaries under each of the respective programs from providers in the area. In exchange, the MCOs are paid on a capitated basis by the State.

3

Capitation is a method of financing that distinguishes managed care service plans from traditional fee-for-service plans.[5] It allows healthcare payers like Medicaid and CHIP to purchase services at a per person/per month rate from providers like the MCOs; in turn, the MCOs are paid pursuant to a capitated rate schedule. The capitation rates are fixed sums, calculated monthly for each enrolled member, regardless of the amount of covered services used by the member. Thus, because Medicaid and CHIP are government-funded programs, these fully-capitated contracts provide budget certainty to the State. Capitation rates are considered cost-effective if the MCOs' average cost of providing services is less than what it would have cost under the traditional fee-for-service plan. Accordingly, the contracts between the Commission and the MCOs incorporate provisions to ensure that the rates paid will be cost-effective. The key issue in this appeal concerns the interpretation and application of these provisions, as well as the relevant state and federal statutes.

It is undisputed that the Commission is responsible for making eligibility determinations for Medicaid and CHIP beneficiaries. *See* 42 U.S.C.A. § 1396a(a)(5) ("determination of eligibility for medical assistance under the [state Medicaid] plan shall be made by the State or local agency"), § 1397bb(b) (state CHIP plan shall include methods of establishing eligibility); 42 C.F.R. §§ 431.10, 435.916 (2005) (single state agency shall be responsible for making eligibility determinations related to Medicaid on continuing basis), § 457.340(d)(1) (2005) (state agency must

---

[5] Under a traditional fee-for-service arrangement, the healthcare provider is reimbursed for all procedures that are provided at a price controlled by the healthcare provider. *See Vista Health Plan, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-03-00216-CV, 2004 Tex. App. LEXIS 4529, at *6 n.6 (Tex. App.—Austin May 20, 2004, pet. denied) (mem. op.); *see also Equal Access for El Paso, Inc. v. Hawkins*, 428 F. Supp. 2d 585, 593-94 (W.D. Tex. 2006).

promptly determine CHIP eligibility); Tex. Gov't Code Ann. § 531.0055(b)(4) (West 2004) ("determining eligibility for benefits under the following programs is the responsibility of and must be centralized by the commission: (A) the child health plan program; . . . (C) the medical assistance program"); Tex. Health & Safety Code Ann. § 62.104 (West 2001) (Commission shall develop CHIP eligibility screening procedures). The parties dispute, however, what action is required of the Commission when a beneficiary enrolled in one of the MCOs' plans becomes ineligible to participate in the respective plan. More specifically, they dispute whether the Commission must retroactively disenroll a special class of beneficiaries—underweight infants born to mothers enrolled in one of the MCOs' plans—if those infants become ineligible to participate in or be mandatorily enrolled in the plan because they become eligible for SSI.[6]

By law, a child born to a Medicaid or CHIP beneficiary is generally enrolled in the same plan as its mother. *See* 42 U.S.C.A. § 1396a(e)(4); 42 C.F.R. § 435.117(a) (2005). If, however, the child is born underweight, then the child is eligible for SSI.[7] Of central importance to this case is the impact that SSI eligibility has on a child's eligibility to participate in a Medicaid or CHIP MCO.

---

[6] The SSI program is administered by the federal Social Security Administration (SSA) to provide cash assistance to individuals who are aged, blind, or disabled and who have limited incomes or resources. *See* 42 U.S.C.A. §§ 1381-1381a (West 2003).

[7] For purposes of SSI, an underweight child is considered "functionally disabled" if the child is born "weighing less than 1200 grams" or "weighing at least 1200 but less than 2000 grams at birth, and [is] small for gestational age . . . meaning a birth weight that is at or more than 2 standard deviations below the mean or that is below the 3rd growth percentile for the gestational age of the infant." 20 C.F.R. § 416.926a(m)(7), (8) (2006); *see also* 42 U.S.C.A. § 1381 (West 2003), § 1382c(a)(3)(C) (West Supp. 2006).

Regarding Medicaid MCOs, there is a residential difference (between Harris County and the rest of Texas) in the impact that a child's SSI eligibility has on the child's ability to participate in a managed care plan. This dichotomy results from how Texas administers the State of Texas Access Reform (STAR) program.

When Medicaid services are provided pursuant to a contract obtained with a section 1915(b) waiver, the plan is classified as part of the STAR program. *See* 1 Tex. Admin. Code § 353.2(57) (2006), § 353.402(41) (2004) (STAR program "is the name of the State of Texas Medicaid managed care program established in response to legislative mandate and by federal waiver").[8] Within this program, there are STAR MCOs and STAR PCCMs (Primary Care Case Management plans, which mirror traditional fee-for-service plans). Additionally, there is a pilot program run only in Harris County known as STAR+PLUS, which is designed to provide care to "a more fragile population" and is administered pursuant to waivers under sections 1915(b) and 1915(c). *See id*. §§ 353.2(58), 353.601 (2006). Community Health Choice provides only STAR MCO services, not STAR+PLUS or STAR PCCM services. The existence of the STAR+PLUS plan in Harris County means that SSI eligibility affects a child's ability to participate in a STAR MCO differently in Harris County than in the rest of Texas.

Under federal law, a state receiving federal Medicaid funding must make available Medicaid benefits to individuals receiving SSI because such persons are deemed "categorically needy." *See* 42 U.S.C.A. § 1396a(a)(10)(A)(i); 42 C.F.R. §§ 435.120, 435.909 (2005). Thus, if a

---

[8] The legislature has expressly authorized the Commission to adopt administrative rules as necessary to carry out the Commission's responsibilities in administering the Medicaid and CHIP programs. *See* Tex. Gov't Code Ann. §§ 531.001, .033 (West 2004).

6

child is SSI eligible, then the child is eligible for Medicaid. *See* Tex. Hum. Res. Code Ann. § 32.025(a) (West Supp. 2006). Although SSI-eligible children are automatically eligible to receive Medicaid benefits, they are *prohibited from receiving these benefits through a managed care plan* (1) at all in Harris County and (2) absent a voluntary election to be enrolled in a STAR MCO in any other Texas county.

This is because federal law dictates that the State cannot require an SSI-eligible child to enroll in a Medicaid managed care organization. *See* 42 U.S.C.A. § 1396u-2(a)(2)(A)(i). Outside of Harris County, an SSI-eligible child may *voluntarily* enroll in a STAR MCO, but enrollment of an SSI-eligible child in a STAR MCO cannot be *mandatory*. *Id*. Thus, outside of Harris County, SSI-eligible children can be automatically enrolled in a STAR PCCM, with the option of voluntarily electing to participate in a STAR MCO.

Within Harris County, SSI-eligible children can elect to receive health care services from either a STAR+PLUS or a STAR PCCM plan—but they are not allowed to enroll (even voluntarily) in a STAR MCO. If no affirmative choice is made, these children will automatically be enrolled in a STAR PCCM. *See* 1 Tex. Admin. Code § 353.603(c) (2006). Thus, in Harris County, SSI-eligible children will be enrolled by default into a STAR PCCM or may voluntarily elect to participate in a STAR+PLUS plan.[9]

The impact of SSI eligibility on a child's ability to participate in a CHIP MCO is uniform across Texas. Underweight newborns weighing less than 1200 grams are eligible for SSI.

---

[9] These facts of eligibility are reflected in the 1915(b) waiver documents for the STAR and STAR+PLUS programs; they were also admitted by the Commission in response to the MCOs' requests for admissions.

7

*See* 42 U.S.C.A. § 1381 (West 2003), § 1382c(a)(3)(C) (West Supp. 2006); 20 C.F.R. § 416.926a(m)(7), (8) (2006). If a child is eligible for SSI, the child is also eligible for Medicaid. *See* Tex. Hum. Res. Code Ann. § 32.025(a); *see also* 42 C.F.R. §§ 435.120, 435.909. If the child is eligible for SSI/Medicaid, then the child is ineligible for CHIP. *See* 42 U.S.C.A. § 1397bb(b)(3)(A) ("only targeted low-income children [shall be] furnished child health care assistance under the State child health plan"), § 1397jj(b)(2)(C) (defining "targeted low income child" for CHIP as one "not found to be eligible for medical assistance under [§§ 1396 *et. seq.*, the Medicaid Act]"); 42 C.F.R. § 457.310 ("targeted low-income child must not be . . . [f]ound eligible or potentially eligible for Medicaid under policies of State plan"); Tex. Health & Safety Code Ann. § 62.101(a)(2) (West Supp. 2006) (to be eligible for CHIP, child cannot be eligible for Medicaid); 1 Tex. Admin. Code § 370.45 (2006) ("A child that meets all Medicaid eligibility requirements is not eligible for CHIP.").

As stated, the Commission is responsible for making eligibility determinations related to both Medicaid[10] and CHIP[11] beneficiaries. Therefore, in light of the eligibility rules set forth above, the Commission must determine that, once a child is eligible for SSI, the child is ineligible to participate (1) in a STAR MCO inside Harris County, (2) in a STAR MCO outside of Harris

---

[10] *See* 42 U.S.C.A. § 1396a(a)(5) (West Supp. 2006); 42 C.F.R. §§ 431.10, 435.916 (2005); Tex. Gov't Code Ann. § 531.0055(b)(4)(C) (West 2004); *see also* 1 Tex. Admin. Code § 353.403(b) (2004) (Commission "shall determine which Medicaid eligible clients residing in a STAR Program service area will be mandatory or voluntary members and which Medicaid eligible clients may be excluded from participation in managed care").

[11] *See* 42 U.S.C.A. § 1397bb(b) (West 2003); 42 C.F.R. § 457.340(d)(1) (2005); Tex. Gov't Code Ann. § 531.0055(b)(4)(A) (West 2004); Tex. Health & Safety Code Ann. § 62.104 (West 2001).

County, unless the child makes a voluntary election to do so, and (3) in a CHIP MCO anywhere in Texas. The essential question remains, however: Once the Commission determines that an underweight newborn is ineligible to participate in a STAR MCO or CHIP MCO as a result of the child's SSI eligibility, does the law or contract require the Commission to disenroll the child at the time of ineligibility?

According to the MCOs, the Commission is obligated to retroactively disenroll underweight newborns from Community Health Choice's STAR MCO and from El Paso First's CHIP MCO at the point of SSI eligibility, thereby eliminating the MCOs' responsibility to pay for the healthcare services rendered to the newborns from the moment of SSI eligibility onward. The Commission urges, on the other hand, that no provision in the federal or state law requires the Commission to retroactively disenroll these beneficiaries and that the contracts between the Commission and MCOs expressly provide that the MCOs shall remain responsible for all payments during the hospital stay of a beneficiary who was eligible to participate at the time of hospitalization, even if that beneficiary becomes ineligible at some point during his or her hospital stay. Additionally, the Commission contends that, because it was acting within its lawful authority to administer the Medicaid and CHIP programs, the trial court lacked jurisdiction to declare that the Commission must retroactively disenroll certain beneficiaries and, moreover, that any such declaration is an attempt to control state action, which is prohibited by sovereign immunity.

**DISCUSSION**

Because subject matter jurisdiction is essential to the authority of a court to decide a case, we begin with the Commission's second issue—its claim that the trial court erred in denying

9

its plea to the jurisdiction on the basis of sovereign immunity. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

**Plea to the Jurisdiction based on Sovereign Immunity**

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.). Whether a court has subject matter jurisdiction and whether a plaintiff has affirmatively established subject matter jurisdiction are questions of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied).

In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we construe the pleadings in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *State v. 1165 Airport Blvd. Office Bldg., Ltd.*, No. 03-05-00630-CV, 2006 Tex. App. LEXIS 7082, at *8-9 (Tex. App.—Austin Aug. 11, 2006, no pet.) (opinion).

The Commission is a state agency. Sovereign immunity generally protects the State and its agencies from suit absent legislative consent to sue the State. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997); *Rylander*, 23 S.W.3d at 135. In the absence of a waiver of governmental immunity, a court has no subject matter jurisdiction to entertain a suit against a governmental unit. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

10

The Texas Supreme Court, however, has recognized that certain declaratory judgment actions do not implicate the doctrine of sovereign immunity. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see also Sweeney v. Jefferson*, No. 03-04-00223-CV, 2006 Tex. App. LEXIS 6703, at *22-23 (Tex. App.—Austin July 28, 2006, no pet.) (opinion). "Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority." *IT-Davy*, 74 S.W.3d at 855. "This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability" and are, therefore, "not 'suits against the State.'" *Id.*; *see also Rylander*, 23 S.W.3d at 135-37.

The Uniform Declaratory Judgments Act (UDJA) provides one avenue for a party whose rights have been affected by a statute to seek declaratory relief against the State. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997). The UDJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Id*. § 37.002(b); *IT-Davy*, 74 S.W.3d at 855. Specifically, the UDJA provides that:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). Importantly, however, the UDJA is merely a procedural device for deciding matters already within a court's subject matter jurisdiction. *Chenault*

*v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). It "does not extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature." *IT-Davy*, 74 S.W.3d at 855.

Here, the MCOs asked the trial court to issue declarations pursuant to the UDJA[12] regarding the Commission's duties to determine ineligible and retroactively disenroll SSI-eligible children from Community Health Choice's STAR MCO (both within and outside of Harris County) and from El Paso First's CHIP MCO everywhere in Texas. The declaratory relief requested by the MCOs is based on their claim that the Commission acts in violation of federal and state law and without statutory authority by refusing to disenroll beneficiaries who have become eligible for SSI benefits and, thus, ineligible to participate in the STAR or CHIP MCOs.

---

[12] The MCOs also cited government code section 2001.038 as a basis for declaratory relief. Section 2001.038 authorizes declaratory relief for the determination of the validity or applicability of an agency rule if the plaintiff alleges "that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a) (West 2000). A "rule" is defined as "a state agency statement of general applicability that . . . implements, interprets or prescribes law or policy" or "describes the procedure or practice requirements of a state agency." *Id*. § 2001.003(6)(A) (West Supp. 2006). Although the Commission has enacted rules that relate to eligibility and enrollment of Medicaid and CHIP beneficiaries, the MCOs did not expressly challenge any such rule in seeking declaratory relief. Instead, their declaratory judgment action is based on the claim that the Commission has acted outside of its statutory authority. Accordingly, we will analyze the MCOs' requested relief solely under the UDJA. *See Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 268 (Tex. App.—Austin 2002, no pet.) (section 2001.038 "cannot provide jurisdiction because . . . [n]othing in Beacon's complaints [that TDI has exercised authority beyond that conferred on it by the legislature] qualifies as an attack on an agency 'rule' as the statute defines that term"); *see also Texas Dep't of Transp. v. City of Amarillo*, No. 07-04-00485-CV, 2005 Tex. App. LEXIS 7882, at *4 (Tex. App.—Amarillo Sept. 27, 2005, pet. denied) (mem. op.).

We disagree with the Commission's claim that the MCOs have no standing to seek a declaration construing these statutes[13] because, as provided by the UDJA, the MCOs' rights are affected by the statutes—determining whether the Commission must disenroll ineligible beneficiaries in turn determines whether the MCOs are obligated to pay for healthcare services rendered to these beneficiaries once they have become SSI eligible. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004.

The purpose of the MCOs' declaratory judgment action is to determine the proper construction of the applicable statutes and to obtain a declaration of their rights under the statutes. It is not a suit to impose liability against the State. Consequently, the MCOs' requested declarations fall squarely within the supreme court's description of the type of suit against the State that is not barred by sovereign immunity—a suit for declaratory relief against official state actors who allegedly act without legal or statutory authority in attempt to compel the state officials to act within their official capacity. *See IT-Davy*, 74 S.W.3d at 855.[14]

---

[13] The Commission relies on *Evergreen Presbyterian Ministries v. Hood*, 235 F.3d 908, 928-29 (5th Cir. 2000), for this argument. *Evergreen* held only that health care providers have no private right of action to enforce one specific "equal access" provision of the Medicaid Act; according to the Fifth Circuit, only beneficiaries can enforce that provision. *Id*. Other cases, however, have determined that providers have standing to sue the Commission seeking a declaration of their rights under the Act. *See, e.g., Equal Access for El Paso, Inc.*, 428 F. Supp. 2d at 605 (providers had standing on claims regarding inadequate reimbursement rates).

[14] *See also State v. 1165 Airport Blvd. Office Bldg., Ltd.*, No. 03-05-00630-CV, 2006 Tex. App. LEXIS 7082, *13 (Tex. App.—Austin Aug. 11, 2006, no pet.) (opinion) ("claim that state officials exceeded their statutory authority in imposing the warrant hold is not a suit against the State and thus is not barred by sovereign immunity"); *Sweeney v. Jefferson*, No. 03-04-00223-CV, 2006 Tex. App. LEXIS 6703, at *23 (Tex. App.—Austin July 28, 2006, no pet.) (opinion) (district court had jurisdiction to entertain Confederate Veterans' claims for declaratory relief based on allegations that state officials acted "without the approval of the Texas Historical Commission or any other state agency before removing the original plaques from the lobby of the Supreme Court Building and that this action was taken without legal authority in violation of . . . the natural resources code and . . . the government code"); *City of El Paso v. Heinrich*, 198 S.W.3d 400, 407 (Tex. App—El Paso 2006,

Further, the MCOs expressly asserted that they were not seeking money damages from the Commission and that they were not suing for breach of contract. Although the Commission relies on contractual provisions as evidence that it has no duty to retroactively disenroll ineligible beneficiaries, the MCOs' suit does not seek to enforce the contract or hold the Commission liable under it—rather, the MCOs claim that the contract provisions cited by the Commission are contrary to the federal and state laws governing Medicaid and CHIP. We conclude that the trial court had jurisdiction to entertain the MCOs' claims for declaratory relief. The Commission's second issue is overruled.

Having determined that the trial court properly denied the Commission's plea to the jurisdiction, we now turn to Commission's first issue and consider the merits of the declaratory relief granted by the court.

**Declaratory Judgment**

After conducting a hearing on the Commission's plea to the jurisdiction and the MCOs' motion for summary judgment, the trial court issued its final judgment granting the MCOs' request for declarations concerning the ineligibility and retroactive disenrollment of SSI-eligible

pet. filed) (suit to declare whether statute entitled plaintiff to receive benefits that vested upon husband's death was not barred by sovereign immunity); *Houston Mun. Employees Pension Sys. v. Ferrell*, 177 S.W.3d 502, 511 (Tex. App.—Houston [1st Dist.] 2005, pet. granted) ("Because the plaintiffs have brought a declaratory judgment action to determine the proper construction of the applicable statutes and to obtain a declaration of their rights, status and legal relations under the statutes to establish their entitlement to pension benefits in HMEPS, we hold that their action does not implicate the doctrine of governmental immunity."); *Rylander v. Caldwell*, 23 S.W.3d 132, 136-37 (Tex. App.—Austin 2000, no pet.) (suit to declare government code provision unconstitutional was permitted against Comptroller because it fell "squarely within this exception to sovereign immunity").

children from (1) the STAR MCO in Harris County, (2) the STAR MCO in all counties besides Harris County, and (3) the CHIP MCO everywhere in Texas. On appeal, the Commission argues that the trial court erred by declaring that the Commission must retroactively disenroll any beneficiary from these programs because nothing in the federal or state law requires such retroactive disenrollment and because the Commission's contracts with the MCOs demonstrate that no such action is required. The specific issue presented by the Commission's claim, therefore, is whether the trial court erred by making the following three declarations:

1. Medicaid beneficiaries twenty-one years of age and under who reside in Harris County and who are eligible for Supplemental Security Income ("SSI") . . . if enrolled in a STAR [MCO][15] at the time SSA makes its determination, must be disenrolled from the STAR [MCO] retroactive to the date the beneficiary became eligible for SSI so that they may [elect either to enroll in the STAR+PLUS program or be enrolled in the STAR PCCM].

2. Medicaid beneficiaries who are eligible for SSI and who reside in any Texas county outside of Harris County . . . if enrolled in a STAR [MCO] at the time SSA makes its determination, must be disenrolled from the STAR [MCO] retroactive to the date the beneficiary became eligible for SSI so that they may [elect whether to voluntarily participate in a STAR MCO].

3. A child entitled to Medicaid benefits is no longer eligible for CHIP benefits, effective on the day the child becomes entitled to Medicaid benefits, and must be disenrolled from CHIP retroactive to the date the child became eligible for SSI.

---

[15] For clarity and consistency with the rest of our discussion, where the trial court used the phrase "STAR HMO," we substitute "STAR MCO," which is how Community Health Choice labels itself in its appellate brief.

***Standard of Review***

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010; *City of Austin v. Garza*, 124 S.W.3d 867, 871 (Tex. App.—Austin 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Armstrong v. Hixon*, No. 13-05-00320-CV, 2006 Tex. App. LEXIS 9456, at *6 (Tex. App.—Corpus Christi Oct. 26, 2006, no pet.) (opinion); *Garza*, 124 S.W.3d at 871. Here, because the trial court determined the declaratory judgment issue through summary judgment proceedings, we review the propriety of the trial court's declarations under the same standards we apply to summary judgment. *See Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The MCOs' motion was based on traditional summary judgment grounds. *See* Tex. R. Civ. P. 166a(c). In a traditional summary judgment, the movant bears the burden of demonstrating that no genuine issue of material fact remains and that it is entitled to judgment as a matter of law. *Id.*; *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

Here, neither party contends that a genuine issue of material fact exists. Rather, both the Commission and the MCOs present their arguments as purely legal questions involving the construction of state and federal statutes and rules regarding Medicaid, CHIP, and SSI and of various provisions in their contracts. Thus, we will review each of the contested declarations de novo by construing the applicable provisions to determine whether the declarations were correct as a

16

matter of law. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25-26 (Tex. 2003) (conducting de novo review of declaratory judgment pursuant to statutory construction analysis).

If reversal is warranted, the material facts are established, and there are no further proceedings necessitating a remand, then this Court has a duty to render the judgment the trial court should have rendered. *See Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145, 149 (Tex. App.—Austin 2003, pet. filed); *McAllen Police Officers' Union v. Tamez*, 81 S.W.3d 401, 405 (Tex. App.—Corpus Christi 2002, pet. dism'd) (citing Tex. R. App. P. 43.3); *City of Galveston v. Giles*, 902 S.W.2d 167, 172 (Tex. App.—Houston [1st Dist.] 1995, no writ). However, if there is no error of law in the trial court's declarations, we must affirm the judgment. *See Garza*, 124 S.W.3d at 868.

The Commission is correct that no single statutory provision expressly states that the Commission must retroactively disenroll underweight newborns from the STAR MCO or CHIP MCO from the time the newborns become eligible for SSI. If there were such a statute, the MCOs would not have needed to seek a declaration of their rights and the Commission's responsibilities under the law. Even still, when the relevant provisions of various state and federal statutes and rules, the Commission's contracts, and its section 1915(b) waiver are read in conjunction with one another, the most logical interpretation is that the Commission is obligated to retroactively disenroll beneficiaries who have become ineligible to participate in a STAR MCO or CHIP MCO based on their SSI eligibility. *See* Tex. Gov't Code Ann. § 311.021 (West 2005) (in construing statutes, presume that just and reasonable result was intended); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002) (must attempt to harmonize statute's various provisions);

17

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d. 486, 493 (Tex. 2001) (must consider statute as whole and must presume legislature intends entire statute to be effective and that just and reasonable result is intended).

We first consider the trial court's declarations related to the Commission's duty to retroactively disenroll SSI-eligible children from Community Health Choice's STAR MCO.

***Declarations regarding Community Health Choice's STAR MCO***

Section 533.0075 of the Texas Government Code provides that "[t]he commission shall: . . . (3) retain responsibility for enrollment and disenrollment of recipients in managed care plans." Tex. Gov't Code Ann. § 533.0075(3) (West 2004). Thus, the legislature has communicated an intent for the Commission to bear the responsibility of disenrolling beneficiaries from STAR MCOs, which is inclusive of the responsibility to disenroll beneficiaries who have become ineligible to participate. *See id*. The Commission has recognized this duty in section 14.2.1 of its General Contract for Services with the MCOs, which states that the Commission "has the right *and responsibility to* enroll and *disenroll* eligible individuals into the STAR program." (Emphasis added.) The Commission also admitted in response to the MCOs' requests for admissions that it is the agency "responsible for enrolling and disenrolling recipients into managed care." Similarly, the Commission's administrative rule titled "STAR Enrollment" provides that the Commission "shall conduct enrollment and disenrollment activities or contract with another agency or contractor to assume administration of these functions." 1 Tex. Admin. Code § 353.403(c) (2004). More specifically, the Commission's 1915(b) waiver states that:

*The State performs functions in the enrollment/disenrollment process for children with special needs.*[16] . . . The State's Enrollment Broker, MAXIMUS, Inc., is responsible for performing all functions of the enrollment process of all Medicaid managed care eligibles, including children with special needs. Disenrollment functions are performed by the Enrollment Broker under the supervision of the State. . . . *The final decision to disenroll a member from a managed care plan rests solely with the State.*

(Emphasis added.) These provisions establish that if a child is enrolled in a STAR MCO and then becomes ineligible to participate in that program, the Commission is responsible for (1) making that eligibility determination[17] and (2) disenrolling the ineligible child from the STAR MCO.

More importantly, under this statutory scheme, these underweight newborns should never be enrolled in the STAR MCO to begin with. Government code section 533.0075 provides that the Commission shall:

(4) develop and implement an expedited process for determining eligibility for and enrolling pregnant women and newborn infants in managed care plans; . . . and

(6) temporarily assign Medicaid-eligible newborn infants to the traditional fee-for-service component of the state Medicaid program [i.e., PCCM] for a period not to exceed the earlier of: (A) 60 days; or (B) the date on which the Texas Department of Human Services has completed the newborn's Medicaid eligibility determination, including assignment of the newborn's Medicaid eligibility number.

---

[16] The definition of "children with special needs" in the 1915(b) waiver includes "blind/disabled children and related populations (eligible for SSI under Title XVI)."

[17] *See supra* footnote 10.

19

Tex. Gov't Code Ann. § 533.0075(4), (6) (West 2004).[18]  By these provisions, the legislature has recognized the need to immediately provide coverage for infants born to low-income mothers.  Yet, the legislature has *not* mandated that the infants must receive their coverage from a STAR MCO.[19]  Rather, the legislature expressly charged the Commission with the responsibility to *first determine whether such infants are eligible* to be enrolled in a managed care plan.  *See id.* § 533.0075(4).  During the time that the eligibility determination is being made, the Commission should enroll the infants in a PCCM plan—not a STAR MCO.  *See id.* § 533.0075(6); *see also* 1 Tex. Admin. Code § 353.603(c).  This is reflected in the Commission's 1915(b) waiver, which states that "the [Commission's] auto-assignment process for children with special health care needs [into a PCCM plan] ensures that no child becomes a member of a capitated MCO delivered model without an affirmative election."

The Commission overlooks this point in arguing that it has no duty to retroactively disenroll these beneficiaries.  If the Commission had followed the mandate in section 533.0075(6) and its section 1915(b) waiver to begin with and automatically assigned SSI-eligible children to a STAR PCCM, then the Commission would not have to retroactively disenroll ineligible children from the STAR MCO.  After a child's eligibility is determined (which will take, at most, 60 days), then the child may either remain in the STAR PCCM or make a voluntary election to participate in

[18]  The applicable provisions of section 533.0075 were previously discussed by this Court in *Vista Health Plan*, 2004 Tex. App. LEXIS 4529, at *13-15.  In that case, however, we simply set forth the parties' competing interpretations of the statute and declined to express an opinion on the merits.  *See id.* at *9 n.7.  No other court has addressed section 533.0075.  *See* Tex. Gov't Code Ann. § 533.0075 (West 2004).

[19]  It would, in fact, violate federal law to mandate that certain infants (those eligible for SSI) be enrolled in a Medicaid managed care plan.  *See* 42 U.S.C.A. § 1369u-2(a)(2)(A)(i) (West 2003).

20

a STAR MCO (outside of Harris County) or a STAR+PLUS plan (inside of Harris County). Nonetheless, if an infant is enrolled at birth in a STAR MCO because of its mother's participation in the plan, but the infant is deemed ineligible to participate in that plan because it is eligible to receive SSI, then—as discussed above—the Commission should disenroll the infant from the STAR MCO, permanently in Harris County, or until a voluntary election can be made in all other counties. *See* Tex. Gov't Code Ann. § 533.0075(3); 1 Tex. Admin. Code § 353.403(c).

In arguing that the trial court's declarations were in error, the Commission relies on two provisions in its General Contract for Services:

6.1.1:  [MCO] must pay for or reimburse for all covered services provided to mandatory-enrolled Members for whom [MCO] is paid capitation.

6.3.1:  The payor responsible for the hospital/facility charges at the start of an inpatient stay remains responsible for hospital/facility charges until the time of discharge. . . .[20]

According to the Commission, these sections establish that the MCOs are responsible for all costs incurred during the hospital stay of an infant who is enrolled in a STAR MCO at the time of hospitalization (i.e., birth), even if the infant is born or becomes eligible for SSI and is, therefore, not an eligible participant of the STAR MCO (1) at all in Harris County or (2) absent a voluntary

---

[20] This provision continues on to say "or until such time that there is a loss of Medicaid eligibility." This phrase is irrelevant for purposes of this case, however, because no party claims these underweight newborns are ineligible for Medicaid. Rather, they remain Medicaid eligible but, based on their SSI eligibility, they may not receive Medicaid services through a Medicaid MCO (a STAR MCO), at all in Harris County, or absent a voluntary election in all other counties. *See* 42 U.S.C.A. § 1369u-2(a)(2)(A)(i).

21

election in all other counties. The Commission asserts that this is a risk knowingly undertaken by the MCOs in entering a "risk comprehensive" contract with the Commission. We disagree.

First, section 6.1.1 is expressly limited to "mandatory-enrolled Members." Regarding the STAR MCO, this cannot include SSI-eligible children because federal law prohibits the State from mandatorily enrolling them in Medicaid managed care programs. *See* 42 U.S.C.A. § 1369u-2(a)(2)(A)(i). Second, the Commission misinterprets section 6.3.1 by failing to read it in light of the statutory and administrative scheme requiring the Commission to automatically assign Medicaid-eligible children to a STAR PCCM, not a STAR MCO. *See* Tex. Gov't Code Ann. § 533.0075(6); 1 Tex. Admin. Code § 353.603(c). If the Commission complies with this procedure, the STAR MCO will never wind up in the position complained of in this suit—i.e., being held responsible for payment of healthcare services rendered to an underweight newborn who is an ineligible beneficiary. Furthermore, even if the Commission enrolls an underweight, SSI-eligible newborn in a STAR MCO, nothing in section 6.3.1 releases the Commission from the responsibility placed on it by government code section 533.0075(3) to disenroll ineligible beneficiaries.

To read section 6.3.1 as suggested by the Commission would require SSI-eligible children to participate in a STAR MCO, which federal law prohibits both within and outside of Harris County. *See* 42 U.S.C.A. § 1369u-2(a)(2)(A)(i). This is not a logical interpretation because the discretion afforded the Commission to administer the state Medicaid program is not unlimited. Rather, it is qualified by the requirement that a state opting to participate in Medicaid must fully comply with the federal statutes and regulations governing the program. *See Schweiker v. Gray*

22

*Panthers*, 453 U.S. 34, 36-37 (1981)[21]; *see also American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001) (quoting *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942)) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it."). As stated by the Seventh Circuit, "a state's discretion in administering the Medicaid program does not shelter it from judicial action on those occasions where it has transgressed the strictures of the Social Security Act." *Smith v. Miller*, 665 F.2d 172, 178 (7th Cir. 1981).

Accordingly, as a matter of law, the court did not err in declaring that children enrolled in a STAR MCO who are determined to be SSI eligible and (1) who reside in Harris County must be disenrolled by the Commission from the STAR MCO retroactive to the date the beneficiary became eligible for SSI so that the beneficiary may elect either to enroll in the STAR+PLUS program or be enrolled in the STAR PCCM, and (2) who reside anywhere else in Texas must be disenrolled by the Commission from the STAR MCO retroactive to the date the beneficiary became eligible for SSI so that the beneficiary may elect whether to voluntarily participate in a STAR MCO.

---

[21] Medicaid is a federal-state assistance program, run by state governments within federal guidelines, to provide healthcare services to eligible, low-income recipients. *See* 42 U.S.C.A. §§ 1396-1396v (West 2003 & Supp. 2006). A state's participation in Medicaid is voluntary, but if a state chooses to participate, it must comply with certain statutory and regulatory requirements. *See Wilder v. Virginia Hosp. Assoc.*, 496 U.S. 498, 502 (1990). To qualify for federal assistance, a state must submit and have approved a "plan for medical assistance," which must establish a scheme for reimbursing health care providers for medical services provided to Medicaid recipients. *El Paso County Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 161 S.W.3d 587, 589 (Tex. App.—Austin 2005, pet. filed).

23

*Declaration regarding El Paso First's CHIP MCO*

We now turn to the trial court's declaration that, when a child becomes eligible for Medicaid/SSI, the child is no longer eligible for CHIP, and the Commission must disenroll the child from the CHIP MCO retroactive to the date the child became eligible for SSI. The Commission challenges this declaration in the same fashion as it challenges the STAR MCO declarations—by arguing that nothing in the federal or state statutes requires the Commission to retroactively disenroll ineligible beneficiaries and that sections 6.1.1 and 6.3.1 of the Contract for General Services affirmatively demonstrate that the MCOs should remain responsible for payment, even if the child is determined to be ineligible for CHIP. Again, based on a collective reading of the applicable statutory, administrative, and contractual provisions, we disagree.

As with the STAR MCOs, the legislature has expressed its intent that the Commission be responsible for the enrollment process related to CHIP MCOs. Section 62.104 of the health and safety code provides that the Commission "shall develop . . . enrollment procedures for children that comply with the requirements of 42 U.S.C. Section 1397bb," and these "procedures shall ensure that Medicaid-eligible children are identified and referred to the Medicaid program" Tex. Health & Safety Code Ann. § 62.104(a); *see* 42 C.F.R. § 457.350 (state agency must ensure that children found eligible for Medicaid through CHIP eligibility screening are enrolled in Medicaid, not CHIP). The Commission acknowledged this responsibility by admitting that it is the agency "responsible for enrolling and disenrolling recipients into CHIP." Therefore, upon determining that an underweight newborn is eligible for SSI/Medicaid and, hence, ineligible for CHIP, the Commission is obligated to disenroll that child from the CHIP MCO.

24

We are not persuaded by the Commission's argument that sections 6.1.1 and 6.3.1 of its general contract with the MCOs discharge it of the responsibility to disenroll ineligible beneficiaries from the CHIP MCO at the moment of SSI eligibility. As stated, section 6.1.1 is expressly limited to "mandatory-enrolled Members." Regarding CHIP, this cannot include SSI-eligible children because the relevant state and federal provisions expressly prohibit SSI-eligible children from participating in CHIP. *See* 42 U.S.C.A. § 1397bb(b)(3)(A), § 1397jj(b)(2)(C); Tex. Health & Safety Code Ann. § 62.101(a)(2); Tex. Hum. Res. Code Ann. § 32.025(a); 1 Tex. Admin. Code § 370.45 (2006). Regarding section 6.3.1, the broad statement that the "payor responsible . . . at the start of an inpatient stay remains responsible . . . until the time of discharge," which appears in the Commission's standard form contract for services with all managed care programs, is controlled by the more narrow provisions in the Commission's specific contract with El Paso First. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994) (recognizing rule of contract construction that specific controls general); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 782 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (same).

Section 11.01(c) of the amended contract between El Paso First and the Commission, which deals expressly with "pregnant members and infants," states that:

> [M]embers who are determined to be Medicaid eligible will be disenrolled from [El Paso First]. Medicaid coverage will be coordinated to begin immediately after CHIP eligibility ends so that there is no gap in health care coverage. . . . Most newborns born to CHIP members or CHIP heads of household will be Medicaid eligible. *Eligibility of newborns must be determined for CHIP before enrollment can occur.*

25

(Emphasis added.)  The Commission's administrative rules define "enrollment" as "the process by which a child *determined to be eligible for CHIP* is enrolled in a CHIP health plan."  1 Tex. Admin. Code § 370.4(13) (2006) (emphasis added).  Furthermore, section 11.04 of the Commission's contract with El Paso First contemplates that members will be disenrolled upon becoming ineligible for CHIP and states that "[d]isenrollment due to loss of eligibility includes but is not limited to . . . [d]ata match with the Medicaid system indicates dual-enrollment in Medicaid and CHIP."  This is expressly referred to in the contract as "retroactive disenrollment."

We read these provisions to mean that newborns should not be enrolled in the CHIP MCO until the Commission determines that they are eligible and that, if a child who has already been enrolled in a CHIP MCO is determined to be eligible for SSI/Medicaid, then the child should be disenrolled from the CHIP MCO.  The Commission has admitted that it is responsible for CHIP enrollment and disenrollment, and the contract expressly provides that the Commission or its agent will be responsible for "enroll[ing] and disenroll[ing] eligible individuals into and out of CHIP."[22]

Thus—pursuant to the relevant state and federal statutes and rules, as well as the applicable provisions of the Commission's contract with El Paso First—the trial court did not err in declaring that a "child entitled to Medicaid benefits is no longer eligible for CHIP benefits, effective

---

[22] Section 11.01(a) of the El Paso First contract permits the Commission to contract with a third party for the actual process of enrolling and disenrolling members.  Nevertheless, the Commission remains ultimately responsible to ensure that ineligible members are disenrolled from the CHIP MCO in accordance with federal and state law prohibiting SSI/Medicaid eligible children from receiving CHIP benefits.  *See* Tex. Health & Safety Code Ann. § 62.055(a)(1), (e)(1) (West 2001) ("commission may contract with . . . a third party administrator to provide enrollment and related services under the state child health plan," but must "retain all policymaking authority over the state child health plan").

on the day the child becomes entitled to Medicaid benefits, and must be disenrolled from CHIP retroactive to the date the child became eligible for SSI."

Based on our determination that none of the declarations issued by the trial court and challenged by the Commission on appeal were incorrect as a matter of law, we overrule the Commission's first issue.

## CONCLUSION

The trial court correctly denied the Commission's plea to the jurisdiction because sovereign immunity does not protect a state agency from a suit brought by a party claiming that the state agency has acted outside of its authority and seeking to determine the proper construction of the applicable statutes and to obtain a declaration of the party's rights under the statutes. *See IT-Davy*, 74 S.W.3d at 855. On this basis, we overruled the Commission's second issue.

The declarations issued by the trial court regarding the eligibility and retroactive disenrollment of SSI-eligible children from Community Health Choice's STAR MCO, both within and outside of Harris County, and from El Paso First's CHIP MCO across Texas were consistent with the applicable provisions in the state and federal statutes, administrative rules, and various contracts governing these parties. On this basis, we overruled the Commission's first issue.

Having overruled both issues raised by the Commission on appeal, we affirm the trial court's judgment.

27

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   January 11, 2007