# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00293-CV

**Southwest Pharmacy Solutions, Inc. d/b/a American Pharmacies, Appellant**

**v.**

**Texas Health and Human Services Commission and Thomas Suehs, solely in his Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-12-000469, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

---

## O P I N I O N

Southwest Pharmacy Solutions, Inc. d/b/a American Pharmacies appeals the trial court's judgment granting the plea to the jurisdiction of the Texas Health and Human Services Commission (HHSC) and Thomas Suehs, Executive Commissioner of HHSC (jointly HHSC) and denying its requests for declaratory and injunctive relief. American Pharmacies challenged HHSC's rulemaking obligations and certain rules promulgated by HHSC related to pharmacy benefits under Texas's Medicaid managed care (MMC) program. For the reasons that follow, we affirm the trial court's judgment.

## STATUTORY AND REGULATORY FRAMEWORK

Medicaid is a cooperative federal-state program that provides health care to needy individuals. *See generally* 42 U.S.C. §§ 1396–1396w (Grants to States for Medical Assistance

Programs).[1] While federal law establishes Medicaid's basic parameters, each state decides the nature and scope of its Medicaid program and submits a State plan describing its program to the federal Center for Medicare and Medicaid Services, which must approve the plan and any amendments. *See* 42 U.S.C. §1396a(a), (b); 42 C.F.R. § 430.10. The federal government agrees to pay a specified percentage of a state's expenditures for covered services provided by the state under an approved State plan. *See* 42 U.S.C. §§ 1396b(a), 1396c, 1396d(b). Outpatient pharmacy services are among the covered services. *See id.* § 1396r-8. In Texas, HHSC is the agency designated to administer federal medical assistance programs, including Medicaid. *See* Tex. Hum. Res. Code § 32.021(a); Tex. Gov't Code § 531.021(a).

Traditionally, health care providers enrolled in the Medicaid program were reimbursed by HHSC on a fee-for-service basis at rates set by HHSC, with pharmacies being reimbursed under the Vendor Drug Program.[2] *See* Act of May 26, 1979, 66th Leg., R.S., ch. 842, §§ 32.028, .029, 1979 Tex. Gen. Laws 2333, 2351 (current versions at Tex. Hum. Res. Code §§ 32.028, .029); *see also* Tex. Gov't Code § 531.021(b)(2); 1 Tex. Admin. Code

---

[1] Because there have been no substantive changes to the relevant state and federal statutes and rules since the filing of this case, we cite to the current versions except where we cite for historical fact of passage or amendment.

[2] Under a traditional fee-for-service arrangement, a health care provider is reimbursed for all procedures that are provided, at a price controlled by the health care providers. *See Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 713 n.5 (Tex. App.—Austin 2007, pet. denied); *Vista Health Plan, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-03-00216-CV, 2004 Tex. App. LEXIS 4529, at *6 n.6 (Tex. App.—Austin May 20, 2004, pet. denied) (mem. op.) (citing Andrew Ruskin, *Capitation: the Legal Implications of Using Capitation to Affect Physician Decision-making Processes*, 13 J. Contemp. Health L. & Pol'y 391, 392–93 (1997)).

§§ 354.1801–.1928 (Tex. Health and Hum. Servs. Comm'n,[3] Pharmacy Services), 355.201 (Establishment and Adjustment of Reimbursement Rates by the Health and Human Services Commission), 355.8541–.8551 (Pharmacy Services: Reimbursement). HHSC is charged with adopting rules for determining reimbursement rates for medical assistance payments. Act of May 26, 1979, 66th Leg., R.S., ch. 842, § 32.028(a) (current version at Tex. Hum. Res. Code § 32.028(a)); Tex. Gov't Code § 531.021(b)(2).

Since 1997, HHSC has had statutory authority to implement an MMC program for providing Medicaid services in Texas. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1262, § 2, 1997 Tex. Gen. Laws 4780, 4781 (current version at Tex. Gov't Code §§ 533.001–.063) (Implementation of Medicaid Managed Care Program); Tex. Gov't Code § 533.002 ("The commission shall implement the Medicaid managed care program as part of the health care delivery system . . . ."). Under MMC, HHSC contracts with managed care organizations (MCOs) to provide Medicaid health services under a managed care plan. *See* Tex. Gov't Code §§ 533.001–.002; *see also* 42 U.S.C. § 1396b (authorizing federal reimbursement to state for costs of contracting with eligible MCOs). The MMC program in Texas operates as a Medicaid "demonstration project" authorized by certain waivers from the required provisions of the State plan granted by the federal government and monitored by the U.S. Department of Health and Human Services. *See* 42 U.S.C. § 1315; Tex. Hum. Res. Code § 32.041 (authorizing planning and evaluations of MMC demonstration project for implementation in 1996–97 biennium).

---

[3] All cites to title 1, chapters 353–55 of the Texas Administrative Code are to rules issued by the Texas Health and Human Services Commission.

HHSC's contracts with MCOs must include "capitation rates that ensure the cost-effective provision of quality health care." Tex. Gov't Code § 533.005(a)(2). "Capitation is a method of financing that distinguishes managed care service plans from traditional fee-for-service plans." *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 712 (Tex. App.—Austin 2007, pet. denied). Under a "capitated" payment system, healthcare payers like Medicaid purchase services at a per person/per month rate from providers like the MCOs in return for payment pursuant to a capitated rate schedule. *Id.* The capitation rates are fixed sums that are calculated monthly for each enrolled member regardless of the amount of covered services used by the member and thus provide budget certainty to the state. *Id.*[4] Capitated payment arrangements are termed "full risk" because the MCO bears the risk that the capitated payment received for an insured member may be insufficient to cover that member's medical needs for any given month. *See* 42 C.F.R. 438.2 (risk contract means contract under which contractor assumes risk for cost of covered services and incurs loss if cost exceeds payments); *Vista Health Plan, Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-03-00216-CV, 2004 Tex. App. LEXIS 4529, at *6 n.4 (Tex. App.—Austin May 20, 2004, pet. denied) (mem. op.) (citing David M. Studdert, *Direct Contracts, Data Sharing and Employee Risk Selection: New Stakes for Patient Privacy in Tomorrow's Health Insurance Markets*,

---

[4] *See also* Tex. Ins. Code § 843.002(4) (defining capitation as "a method of compensating a physician or provider for arranging for or providing a defined set of covered health care services to certain enrollees for a specified period that is based on a predetermined payment per enrollee for the specified period, without regard to the quantity of services actually provided"); 42 C.F.R. § 422.208(a) (defining capitation as "a set dollar payment per patient per unit of time (usually per month) paid to a physician or physician group to cover a specified set of services and administrative costs without regard to the actual number of services provided . . . includ[ing] the physician's own services, referral services, or all medical services").

25 Am. J. L. & Med. 233, 236 (1999)); *see also* 42 U.S.C. § 1395mm(b)(2)(D) (to be eligible for federal reimbursement, MCO must assume full financial risk on prospective basis for provision of health care services).

Prior to March 1, 2012, outpatient pharmacy benefits were excluded from MMC, and Medicaid recipients obtained their outpatient drugs through pharmacies enrolled in the Vendor Drug Program. *See* 1 Tex. Admin. Code § 354.1873 (Freedom of Choice). In 2011, the legislature expanded the MMC program to include outpatient pharmacy benefits. *See* Act of June 27, 2011, 82d Leg., 1st C.S., ch. 7, § 1.02(d), 2011 Tex. Gen. Laws 5390, 5393 (SB 7) (codified at Tex. Gov't Code § 533.005(a)(23)) (contract between HHSC and MCO must include outpatient pharmacy benefit plan). In December 2011, HHSC obtained a waiver from the federal government for its new Medicaid Demonstration Project, entitled "Texas Healthcare Transformation and Quality Improvement Program." The waiver authorized HHSC, among other things, "to restrict freedom of choice of provider through the use of mandatory enrollment in managed care plans for the receipt of covered services[,]" including pharmacy services. *See* 42 U.S.C. 1315(a) (waiver of state plan requirements for demonstration projects); *see also* 42 U.S.C. §1396a(a)(23)(A) (requiring State plan to provide that individuals eligible for medical assistance, including drugs, may obtain such assistance from any qualified provider); 1 Tex. Admin. Code § 354.1873 (affording Medicaid recipients right to obtain pharmacy services from any pharmacy enrolled in Drug Vendor Program). Under MMC, MCOs generally contract with pharmacy benefit managers (PBMs) to act as intermediaries between MCOs and pharmacies. The PBMs establish networks of providers and process prescription drug claims submitted by provider pharmacies.

5

HHSC subsequently proposed rules to comply with SB 7. *See* 36 Tex. Reg. 8667 (2011), *adopted* 37 Tex. Reg. 1292 (2012) (codified at 1 Tex. Admin. Code § 353.901–.915 (Outpatient Pharmacy Services) ("Subchapter J"). The preamble stated that the new rules were proposed to comply with SB 7 and the cost-saving initiatives of the 2012–2013 General Appropriations Act and to implement the statutory mandates consistent with the federally-approved demonstration project waiver. *See id.* at 8667–68; *see also* 42 U.S.C. §§ 1315, 1396a. Included in the proposed rules was a Small Business and Micro-business Impact Analysis required by section 2006.002 of the Government Code. *See* 36 Tex. Reg. 8668–70; Tex. Gov't Code § 2006.002(c) (requiring state agency to prepare economic impact statement and regulatory flexibility analysis before adopting rule that may have adverse economic effect on small businesses). In the economic impact statement, HHSC concluded that the proposed rules would affect independent pharmacies that may be small businesses and that they may experience adverse economic effects as a result of their inclusion in MMC, as required by SB 7. In its regulatory flexibility analysis, HHSC considered three alternative methods for achieving the purposes of the proposed rules, *see* Tex. Gov't Code § 2006.002(c)(2), but declined to implement them, observing that participation in the program was voluntary and any alternative to including pharmacy services in MMC would fail to comply with the mandates of SB 7, *see* 36 Tex. Reg. 8669–70. In February 2012, HHSC adopted the proposed rules without relevant changes. *See* 37 Tex. Reg. 1292. The stated purpose of the new rules is "to implement the requirements of Texas Government Code § 533.005, which establishes requirements for providing outpatient pharmacy benefits through Medicaid managed care." *See* 1 Tex. Admin. Code § 353.901; *see also* Tex. Gov't Code § 533.005. The new rules did not include provisions

6

regulating reimbursements to pharmacy benefits under MMC care. *See* 1 Tex. Admin. Code §§ 353.901–.915.

## FACTUAL AND PROCEDURAL BACKGROUND

American Pharmacies is a for-profit, member-owned cooperative of independent pharmacies operating in Texas and other states. Most of its members are small businesses as defined in section 2006.001(2) of the Government Code, *see* Tex. Gov't Code § 2006.001(2), that provide outpatient drugs to beneficiaries of the Texas Medicaid program administered through HHSC. *See* Tex. Hum. Res. Code § 32.021(a); Tex. Gov't Code § 531.021(a). In January 2012, American Pharmacies filed comments to HHSC's proposed rules, objecting to the lack of minimum reimbursement rates for pharmacy claims paid by MCOs and contending that HHSC had not complied with section 2006.002 of the Government Code. In adopting the rules, HHSC responded to the comments of American Pharmacies and others, but as previously stated, did not modify the rules in response. *See* 37 Tex. Reg. 1292. American Pharmacies filed suit seeking declaratory relief under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, and the declaratory judgment provision of the Administrative Procedure Act (APA), *see* Tex. Gov't Code § 2001.038. American Pharmacies asked the trial court to construe the relevant statutes and declare that HHSC is required to regulate reimbursement rates of pharmacies under the MMC program and that HHSC had failed to perform a proper impact analysis under section 2006.002 of the Government Code because it had failed to adopt a legal and feasible alternative to the proposed rules. American Pharmacies also sought declarations that Suehs's failure to adopt rules governing pharmacy reimbursements and to tailor the new rules so as to reduce their adverse

7

economic impact on small business pharmacy providers was ultra vires and that the new rules were consequently void.

HHSC filed a plea to the jurisdiction asserting that (1) American Pharmacies lacked standing because it had asserted no justiciable interest and (2) Suehs had not acted ultra vires because HHSC had no duty to set pharmacy provider rates under MMC and HHSC had fully complied with section 2006.002 in performing the impact analysis. The trial court found that it had jurisdiction to construe the statutes and rules at issue under the UDJA to determine if Suehs's actions were ultra vires, conducted a hearing on the merits, and rendered final judgment holding that (1) American Pharmacies had failed to allege or prove a justiciable interest; (2) American Pharmacies had failed to allege or prove that HHSC had any rate-setting duty in the MMC context; (3) HHSC had substantially complied with section 2006.002; and (4) Suehs had reasonably construed the statutes governing Texas Medicaid and acted within his discretion and authority, and American Pharmacies had failed to allege or prove that Suehs acted ultra vires with respect to implementation of MMC. The trial court granted HHSC's plea to the jurisdiction and rendered judgment for HHSC in all respects. This appeal followed.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). A plea questioning the plaintiff's standing, which is a component of subject matter jurisdiction, raises questions of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings,

8

we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Heckman*, 369 S.W.3d at 150; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda,* 133 S.W.3d at 227. When the plea challenges the jurisdictional facts, the trial court may consider any evidence the parties have submitted and must do so when necessary to resolve the jurisdictional inquiry. *Id.*; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

When, as here, the jurisdictional facts implicate the merits of the plaintiff's cause of action, the party challenging jurisdiction has a burden similar to that in a traditional summary judgment. *Miranda*, 133 S.W.3d at 227–28; *Good Shepherd Med. Ctr. v. State*, 306 S.W.3d 825, 831 (Tex. App.—Austin 2010, no pet.). If the evidence creates a fact issue as to jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder at trial. *Miranda*, 133 S.W.3d at 227–28; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.). On the other hand, if the evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Poindexter*, 306 S.W.3d at 807. We review the trial court's determination de novo, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Miranda*, 133 S.W.3d at 228; *Poindexter*, 306 S.W.3d at 807.

In its plea to the jurisdiction, HHSC challenges American Pharmacies' standing, contending that it failed to assert a justiciable interest. The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judicial determination sought. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993); *City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 801 (Tex. App.—Austin 2011, pet. granted). A justiciable interest with regard to a statute or rule requires "some actual or threatened restriction" under the statute or rule. *See Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 102 (Tex. App.—Austin 2011, no pet.) (citing *Texas Workers Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex. 1995)).

HHSC's plea to the jurisdiction also challenges American Pharmacies' ultra vires claims. While sovereign immunity bars actions against the state absent a legislative waiver, *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004), requests for declaratory relief that do not attempt to control state action do not implicate governmental immunity at all, *see Heinrich*, 284 S.W.3d at 372 (Tex. 2009). Suits against governmental officials alleging that they "acted without legal authority or failed to perform a purely ministerial act" and seeking to compel the officials "to comply with statutory or constitutional provisions" fall within the "ultra vires" exception to governmental immunity because they "do not attempt to exert control over the state—they attempt to reassert the control *of* the state." *Id.* To determine whether a party has asserted a valid ultra vires claim, we construe the relevant statutory provisions, apply them to the facts alleged, and determine whether those facts constitute acts beyond the official's authority or establish a failure to perform a purely ministerial act. *See Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701–02 (Tex.

10

App.—Austin 2011, no pet.); *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 n.8 (Tex. App.—Austin 2010, no pet.) (quoting *Hendee v. Dewhurst*, 228 S.W.3d 354, 368–69 (Tex. App.—Austin 2007, pet. denied)) (when analyzing whether plaintiff has alleged ultra vires acts, we construe statutes defining official's authority, apply provisions to pleaded and unnegated facts, and determine whether those facts fall within or outside that authority).

The resolution of American Pharmacies' ultra vires claims turns on statutory construction, which is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Of primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). "We generally avoid construing individual provisions of a statute in isolation from the statute as a whole[,]" *Texas Citizens*, 336 S.W.3d at 628, we must consider a provision's role in the broader statutory scheme, *see 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008), and we presume that "the entire statute is intended to be effective[,]" Tex. Gov't Code § 311.021(2). A court may consider the law's objective, the circumstances under which it was enacted, the legislative history, former statutory provisions, and the consequences of a particular construction when construing statutes, whether or not the statute is ambiguous. Tex. Gov't Code § 311.023(1)–(5); *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011). "Construction of a statute must be

11

consistent with its underlying purpose and the policies it promotes." *Northwestern Nat'l Cnty. Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.—San Antonio 2000, pet. denied).

Here, we must construe statutes and rules that HHSC is charged with administering. *See* Tex. Hum. Res. Code § 32.021(a); Tex. Gov't Code § 531.021(a). "[A]n agency's interpretation of a statute it is charged with enforcing is entitled to 'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language." *Texas Citizens*, 336 S.W.3d at 624. When a statutory scheme is subject to multiple interpretations, we must uphold an enforcing agency's construction if it is reasonable and in harmony with the statute. *Id.* at 629 (observing that "governmental agencies have a 'unique understanding' of the statutes they administer") (quoting *Wyeth v. Levine*, 555 U.S. 555 (2009)). This deference is particularly important in construing a complex statutory scheme like that governing Texas Medicaid. *See id.* at 629–30. We construe administrative rules in the same manner as statutes. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). We defer to an agency's interpretation of its own rules unless it is plainly erroneous or contradicts the text of the rule or underlying statute. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied). With these rules of construction in mind, we turn to American Pharmacies' issues.

12

**DISCUSSION**

**HHSC's Duty to Regulate Reimbursement Rates under Managed Care**

In its first three issues, American Pharmacies argues that the trial court erred in construing the relevant statutes so as to find that HHSC was not obligated to regulate pharmacy reimbursement rates under MMC and that Suehs's actions in implementing MMC without doing so were not ultra vires. The crux of the parties' dispute concerning HHSC's duty to regulate pharmacy benefits under MMC is their conflicting interpretations of four statutory provisions. American Pharmacies argues that sections 531.0055(b)(1) and 531.021(b)(2) of the Government Code and sections 32.028(a) and 32.003(4) of the Human Resources Code, read together, demonstrate that HHSC has the obligation to adopt reasonable rates and standards governing "medical assistance payments," which include pharmacy benefits. *See* Tex. Gov't Code §§ 531.021(b)(2), .0055(b)(1); Tex. Hum. Res. Code §§ 32.003(4), .028(a). Government Code section 531.0055(b)(1) requires HHSC to manage Medicaid, including MMC, in accordance with section 531.021. *See* Tex. Gov't Code § 531.0055(b)(1). Section 531.021(b)(2) requires HHSC to adopt rules for determination of rates for medical assistance payments under chapter 32 of the Human Resources Code. *See id.* § 532.012(b)(2). Human Resources Code section 32.028(a) requires HHSC to adopt rules for determination of rates for medical assistance payments. *See* Tex. Hum. Res. Code § 32.038(a).

While "medical assistance" is defined as "all of the health care and related services and benefits authorized or provided under federal law for needy individuals of this state," *see id.* § 32.003(4); Tex. Gov't Code § 533.0025(a) (adopting meaning assigned by section 32.003), "medical assistance *payments*" is not defined. (Emphasis added.) American Pharmacies contends

13

that the plain meaning of the term includes payments under both fee-for-service and MMC and that nothing specifically excludes payments under MMC from the scope of the term. American Pharmacies also cites rule 355.201(b), which governs HHSC's establishment of reimbursement rates, states that its purpose is to implement Government Code section 531.021(d) (guidelines for setting rates under section 531.021(b)(2)), and expressly applies to all programs that provide medical assistance. *See* 1 Tex. Admin. Code § 355.201(b), Tex. Gov't Code § 531.021(d). American Pharmacies thus argues that the term includes payments to pharmacies by MCOs and PBMs in the MMC model.

American Pharmacies also contends that the legislative history of section 531.021 supports its construction of these provisions. Prior to 1997, when MMC was adopted, section 531.021 provided only that "[HHSC] is the state agency designated to administer federal medical assistance funds." *See* Act of Apr. 21, 1995, 74th Leg., R.S., ch. 76, § 8.002, 1995 Tex. Gen. Laws 458, 589 (current version at Tex. Gov't Code § 531.021(a)). In 1997, as part of the act implementing MMC, subsection (b) was added to section 531.021, making HHSC responsible for adopting rules for rates for medical assistance payments under chapter 32. *See* Act of May 28, 1997, 75th Leg., R.S., ch. 1262, § 1, 1997 Tex. Gen. Laws 4780, 4781 (current version at Tex. Gov't Code § 531.021(b)(2)). Because this rulemaking authority was granted to HHSC in an act the purpose of which was to "provide[] for the authority of [HHSC] to administer and operate [MMC]," *see* Senate Research Center, Bill Analysis, Tex. H.B. 2913, 75th Leg. R.S. (1997), American Pharmacies argues that it is clear that the legislature intended to require HHSC to adopt rules to determine rates even in the MMC context.

14

American Pharmacies also argues that section 531.021(b) must be considered in its entirety in the MMC context. American Pharmacies contends that because Government Code section 533.0055(b)(1) requires HHSC to manage MMC in accordance with Government Code section 521.021, and subsections (1)–(3) of section 521.021(b) are joined by "and," HHSC must comply with all three subsections in the MMC context, including subsection (2), which requires the regulation of rates. Consequently, American Pharmacies argues, HHSC's position that subsection (2) does not apply in MMC destroys the meaning of the statute, and the trial court erred in determining that HHSC's interpretation of the statute was reasonable. Rather, American Pharmacies contends, when all the provisions are read together, it is clear that HHSC is obligated to adopt rules for pharmacy benefit reimbursements under MMC, and Suehs's failure to do so was ultra vires.

HHSC has adopted a differing interpretation of these governing statutes. HHSC contends that the statutory provisions are not as "intertwined" as American Pharmacies claims and that the rate-setting requirements of chapter 32 of the Human Resources Code do not apply to MMC as American Pharmacies argues. HHSC points out that chapter 32, which provides rate-setting procedures under the fee-for-service model, was enacted before MMC was adopted in Texas[5] and was not repealed by SB 7—as American Pharmacies argues would have been necessary for it *not* to apply to MMC—because it still applies to fee-for-service payments.[6] HHSC contends that Suehs interprets "medical assistance payments" to mean payments made *by HHSC to providers* and that

---

[5] Section 32.028 was enacted in 1979. *See* Act of May 26, 1979, 66th Leg., R.S., ch. 842, § 32.028, 1979 Tex. Gen. Laws 2333, 2351.

[6] Twenty percent of Medicaid recipients are not enrolled in managed care, and pharmacy reimbursement rates set under chapter 32 and adopted under the Vendor Drug Program still apply to them.

15

he did not abuse his discretion in so interpreting the term. *See* 1 Tex. Admin. Code § 355.201(a)(2) (defining medical assistance as health care related service delivered to Medicaid recipient and authorized for payment or reimbursement *by HHSC or a health and human services agency*); 37 Tex. Reg. 1294 (explaining agency's long-standing interpretation that section 32.028 of Human Resources Code applies only to payments made *by state* to providers in fee-for-service model).

Regarding section 531.021(b), HHSC contends that the legislative history does not support American Pharmacies' construction. It states that in 1999, following the implementation of MMC in 1997, subsection (b)(1) was added to address HHSC's new duties to manage MMC.[7] *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1460, § 3.01, 1999 Tex. Gen. Laws 4953, 4961. HHSC argues that the separation of its duty to manage MMC contracts, required by (b)(1), from the duty to set rates for fee-for-service, required by (b)(2), carries over the federal distinction between MMC and fee-for-service. *See* 42 C.F.R. 438 (Managed Care); 42 C.F.R. 447 (Payments for Services). HHSC contends that in this context and from its plain language, it is clear Government Code section 531.021(d), providing guidelines for setting rates, refers only to 531.021(b)(2), or fee-for-service, and not to (b)(1), or MMC. Thus, HHSC contends, (b)(2) does not apply to MMC, and nothing in Human Resource Code chapter 32, or elsewhere, empowers HHSC to dictate the financial terms of contracts between pharmacies and MCOs or PBMs, to which HHSC is not a party.

HHSC also contends that American Pharmacies' construction of the statutes conflicts with the concept of MMC, federal law, and the legislative history and intent of SB 7. HHSC argues

---

[7] Subsection (3), requiring HHSC to establish guidelines for evaluating MMC, was also added in 1999. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1460, § 3.01, 1999 Tex. Gen. Laws 4953, 4961.

that under MMC, it pays capitation rates through its contracts with MCOs as required by Government Code section 533.005(a)(23) (requiring HHSC contract with MCO to include "outpatient pharmacy benefit plan"), and under traditional fee-for-service Medicaid, it pays provider reimbursement, and that the two models are mutually exclusive. HHSC cites the federal regulation requiring it to ensure that the capitation rates paid to MCOs are actuarially sound, *see* 42 C.F.R. § 438.6(c)(2)(I), which is incorporated into the demonstration waiver under which the MMC plan operates, and contends that requiring MCOs or PBMs to increase payments to pharmacy providers would violate section 438.6 and the waiver by compromising the actuarial soundness of the capitation rates. HHSC also refers to the fiscal note to SB 7—which indicates a legislative intent to save money by moving pharmacy benefits into MMC from a fee-for-service model and estimates the cost savings of including prescription drug coverage in MMC, *see* Fiscal Note, Tex. S.B. 7, 82d Leg., 1st C.S. (2011)—and argues that regulating rates paid by MCOs and PBMs to pharmacy providers would negate the legislature's intended savings. Therefore, HHSC concludes, not adopting rules regulating reimbursement rates for pharmacy benefits under MMC is consistent with its legislative mandate and federal law and was not ultra vires.

We agree with the reasoning of HHSC. Although American Pharmacies' analysis of the interplay between the relevant provisions appears reasonable on its face, its construction of the provisions depends on reading them in isolation from the remainder of the statutes in which they appear and the statutory scheme surrounding them. We must analyze the governing provisions in the context of the statutes as a whole, *see Texas Citizens*, 336 S.W.3d at 628, presuming the statutes are intended to be effective in their entirety, *see* Tex. Gov't Code § 311.021(2). We must consider

17

the role of the provisions in the full Medicaid statutory scheme and in the context in which SB 7 was enacted. *See 20801, Inc.*, 249 S.W.3d at 396; *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 555. We may consider, as well, the goals of MMC and SB 7, the legislative history, the relevant prior provisions, and the consequences of American Pharmacies' construction, *see* Tex. Gov't Code § 311.023(1)–(5); *Atmos Energy Corp.*, 353 S.W.3d at 160. And we must construe the provisions in a way that is consistent with their underlying purpose and the policies they are intended to promote. *See Rodriguez*, 18 S.W.3d at 721.

In SB 7, the legislature expressly moved, or "carved in," pharmacy benefits from the fee-for-service model to MMC with the goal of saving state funds. *See* Tex. Gov't Code § 533.005(a)(23)); Fiscal Note, Tex. S.B. 7, 82d Leg., 1st C.S.; Conference Comm. Report, H.B. 1, 82d Leg., R.S. (Sept. 20, 2011) (Rider 81 to General Appropriations Act) ("Prescription Drug Carve in to Managed Care Organizations"). Under MMC, HHSC contracts with MCOs that provide all covered services to Medicaid recipients. *See* Tex. Gov't Code §§ 533.001, .002; *see also* 42 U.S.C. § 1396b. Directly or through PBMs, the MCOs contract with the provider pharmacies and negotiate the terms of reimbursement. Under this model, HHSC's contract with the MCO includes a capitation rate to ensure cost-effectiveness, *see* Tex. Gov't Code § 533.005(2), and the MCO bears the risk that the capitation payment will be sufficient to cover the services it provides to recipients. *See* 42 C.F.R. 438.2; *Vista Health Plan*, 2004 Tex. App. LEXIS 4529, at *6 n.4. To impose on HHSC the duty to regulate the rate the MCOs pay the provider pharmacies would contravene the "full risk" nature and intent of the managed care model, *see id.*, contravene the clear legislative intent to "carve" pharmacy benefits into MMC, and call for state intervention into private contracts. *See*

18

Medicaid Program; Medicaid Managed Care: New Provisions, 67 Fed. Reg. 40,989, 40,998 (June 14, 2002) (codified at 42 C.F.R. pts. 400, 430–31, 434–35, 438, 440, & 447) (responding to comment suggesting requirement for actuarial soundness be extended to payment rates between MCOs and providers by stating that "[with the exception of payments inapplicable here], we do not regulate the payment rates between MCOs and subcontracting providers" and that "one of the efficiencies of managed care is premised on an MCO's ability to negotiate favorable payment rates with network providers"). Construing the governing statutes and rules in their entirety and in the context of the goals and policies they are intended to promote, as well as in light of the legislative history and prior provisions, we conclude that the plain language of the relevant statutes does not impose on HHSC the duty to set rates for pharmacy reimbursements in the MMC context.

Even if we were to conclude that there is vagueness, ambiguity, or room for policy determinations in these statute and rules, we would conclude that HHSC's interpretation of the relevant code provisions and agency rules is reasonable, in harmony with the statutes and rules, and entitled to deference. *See Texas Citizens*, 336 S.W.3d at 629. We defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute or rule. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438. As the agency designated to administer Medicaid, HHSC is charged with overseeing a complex regulatory scheme, and deference to its construction is particularly important. *See Texas Citizens*, 336 S.W.3d at 629. An agency's construction does not have to be "the only—or the best—interpretation in order to warrant . . . deference." *Id.* at 628. Considering the entire statutory scheme, the goals and policies behind it, and the legislative history and intent, we would conclude that HHSC's interpretation is reasonable, does

19

not conflict with the provisions' language, and is entitled to deference. *See id.* at 628. We therefore conclude that the trial court did not err in finding that Suehs has reasonably construed the statutes governing Texas Medicaid and that American Pharmacies failed to allege or prove that HHSC has any rate-setting duty in MMC or that Suehs's failure to adopt rules for setting pharmacy reimbursement rates in MMC was ultra vires. We overrule American Pharmacies' first through third issues.

**Compliance with Government Code Section 2006.002**

In its fourth issue, American Pharmacies contends the trial court erred by finding that in proposing Subchapter J to implement SB 7, HHSC substantially complied with section 2006.002 of the Government Code, which governs an agency's adoption of rules with an adverse economic impact on small businesses.[8] *See* Tex. Gov't Code § 2006.002. Section 2006.002(a) requires that an agency considering adoption of a rule that would have an adverse effect on small businesses "shall reduce the effect if doing so is legal and feasible considering the purpose of the statute under which the rule is to be adopted." *Id.* § 2006.002(a). Before adopting such a rule, the agency must prepare (1) an economic impact statement estimating the number of businesses affected, projecting the economic impact, and describing alternative methods of achieving the purpose of the proposed rule and (2) a regulatory flexibility analysis that includes the agency's consideration of alternative methods of achieving the purpose of the proposed rule. *Id.* § 2006.002(c)(1), (2). Section 2001.024 of the APA requires that the published notice of a rule include certain statements and "any other

---

[8] The parties do not dispute that American Pharmacies' members qualify as small businesses within the meaning of section 2006.002.

statement required by law." *Id.* § 2001.024(a)(8). Among the other statements required to be included in the notice are the economic impact statement and regulatory flexibility analysis required by section 2006.002. *Id.* § 2006.002(d); *Unified Loan, Inc. v. Pettijohn*, 955 S.W.2d 649, 651 (Tex. App.—Austin 1997, no pet.). Failure to substantially comply with section 2001.024 renders a rule voidable. Tex. Gov't Code § 2001.035(a) (rule voidable unless agency adopts it in substantial compliance with APA sections 2001.0225 through 2001.034).

American Pharmacies contends that HHSC failed to consider and adopt legal and feasible alternatives to reduce the adverse economic effect of Subchapter J on small pharmacies. It cites the Texas Attorney General's guidelines on implementation of section 2006.002's regulatory flexibility analysis, which suggests that among the alternatives agencies may consider are (1) different rules for small businesses, (2) exemptions for certain small businesses, and (3) a "'no action' alternative."[9] American Pharmacies argues that a legal and feasible alternative was to include a provision in Subchapter J requiring MCOs and PBMs to reimburse pharmacies utilizing rates established under Human Resources Code section 32.028 and Government Code section 531.021(b). American Pharmacies also contends that HHSC considered only three alternatives that it knew were obviously illegal and then rejected them on the ground that they were illegal. Because they were adopted without the proper flexibility study and without the adoption of "less onerous rules," American Pharmacies urges, the rules in Subchapter J are invalid.

---

[9] *See* HB 3440 Small Business Impact Final Guidelines, April 2008, *available at* https://www.oag.state.tx.us/AG_Publications/pdfs/hb3430guidelines2008.pdf (last visited June 24, 2013).

In its regulatory flexibility analysis, HHSC considered three alternatives: (1) mail-order prescriptions, (2) selective contracting with large chain pharmacies, and (3) supplemental reimbursements to some pharmacies. *See* 36 Tex. Reg. 8669–70. Contrary to American Pharmacies' assertion, HHSC did not conclude that these alternatives were illegal. Rather, it concluded that (1) limitations in SB 7 and Rider 81 to the General Appropriations Act allowed the inclusion of mail-order prescriptions but precluded HHSC from requiring recipients to use them, *see* 36 Tex. Reg. 8669; Fiscal Note, Tex. S.B. 7, 82d Leg., 1st C.S.; (2) selective contracting could result in a greater adverse impact on small pharmacies; *id.* at 8670; and (3) requiring MCOs to pay providers a certain amount would conflict with the concept of a "risk contract," and federal limitations precluded supplemental reimbursements, *id.*; 42 C.F.R. 438.60. Thus, the record shows that HHSC considered alternatives that were legal and potentially viable but that it concluded there were legal and practical barriers making them infeasible.

Further, the alternative American Pharmacies proposes—including in Subchapter J a provision requiring MCOs and PBMs to reimburse pharmacies using rates established under chapter 32 of the Human Resources Code and section 531.021(b) of the Government Code—would not operate to achieve the purposes of the rule, i.e., to implement the "carve in" of pharmacy benefits into the MMC model, as provided by SB 7, and therefore is not an alternative method of achieving the purpose of the rule withing the meaning of section 2006.002(c)(2). *See* Tex. Gov't Code § 2006.002(c)(2). Any other alternative HHSC might have considered that would fail to include pharmacy benefits in its contracts with MCOs, including those suggested in the attorney general's guidelines, would fail to comply with SB 7 and would likewise not constitute an alternative method

of achieving the purpose of the proposed rules. *See id.*; *see also* Medicaid Program; Medicaid Managed Care: New Provisions, 67 Fed. Reg. 40,998.

American Pharmacies also complains that HHSC did not adopt "less onerous rules." However, that is not the standard of section 2006.002, which requires an agency to reduce the adverse economic impact "if doing so is legal and feasible considering the purpose of the statute under which the rule is to be adopted." *See* Tex. Gov't Code § 2006.002(a). HHSC considered alternatives but concluded that none were feasible to achieve the purpose of implementing MMC as to pharmacy benefits. Therefore, we conclude that the trial court did not err in finding that Suehs substantially complied with section 2006.002 and did not act ultra vires in failing to adopt an alternative method that would reduce the economic impact on American Pharmacies. We overrule American Pharmacies' fourth issue.

**Justiciable Interest**

In its fifth issue, American Pharmacies argues that the trial court erred in finding that it failed to assert a justiciable interest as to HHSC.[10] Under the UDJA and APA, American Pharmacies sought to have the relevant statutory provisions construed and Subchapter J declared void as in violation of Government Code section 2006.002.[11] While HHSC is a proper party to an action

---

[10] Having resolved the issue of American Pharmacies' ultra vires claims against Suehs in issues one through four, we construe this issue to relate to American Pharmacies' claims for declaratory relief against HHSC.

[11] The UDJA provides that "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). Section 2001.038 of the APA provides for a declaratory judgment action to determine the "validity or applicability of a rule . . . if it is alleged that the rule

construing and challenging the validity of statutes it enforces or its rules, *see* Tex. Civ. Prac. & Rem. Code § 37.006(b); Tex. Gov't Code § 2001.038(c); *Heinrich*, 284 S.W.3d at 373 n.6, there must be a justiciable controversy as to the rights and status of the parties that will be resolved by the declaration sought. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *Texas Health Care Info. Council v. Seton Health Plan*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied). A controversy is considered justiciable if there is a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Beadle*, 907 S.W.2d at 467; *Texas Health Care Info. Council*, 94 S.W.3d at 846.

American Pharmacies contends that the undisputed economic losses its members have suffered under MMC is sufficient to establish a justiciable interest and standing. However, although American Pharmacies has suffered economic losses, they are the result of the legislature's decision to "carve" pharmacy benefits into MMC—what American Pharmacies calls "the new unregulated regime"—not the result of Subchapter J, which was adopted to implement the legislative action. As we have already determined, American Pharmacies has not shown that Suehs acted ultra vires in adopting rules to implement SB 7, and it has not challenged SB 7. Therefore, we conclude that American Pharmacies has failed to assert that its rights, status, or other legal relations are affected by the rules it seeks to have declared void and thus has not asserted a justiciable interest under the UDJA. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a).

Under the APA, American Pharmacies must allege that the challenged rules interfere with or impair, or threaten to interfere with or impair, a right or privilege belonging to it. *See* Tex.

or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a).

Gov't Code § 2001.038(a). American Pharmacies contends that HHSC's failure to regulate pharmacy benefits under MMC "effectively prevents [it] from participating in the federal Medicaid program as provided for by the statute" and that the economic harm it has suffered under MMC is sufficient to establish a justiciable interest and standing under section 2001.038. In essence, American Pharmacies argues that the right or privilege that is impaired by the rules is its right to participate as a provider in the Medicaid program under the Vendor Drug Program or similarly regulated reimbursement rates that will mitigate the losses it has sustained under MMC. We do not find this argument persuasive.

Nothing in Subchapter J prevents American Pharmacies from participating in the Medicaid program. For the 20% of Medicaid recipients who are not enrolled in MMC and utilize the services of American Pharmacies' members, HHSC will continue to reimburse the members on a fee-for-service basis under the Vendor Drug Program, and American Pharmacies' rights under the program are not affected. For the 80% of recipients who are now enrolled in MMC for pharmacy benefits pursuant to SB 7, reimbursement rates are determined by the contracts between the MCOs or PBMs and the provider pharmacies. American Pharmacies has cited no authority, and we know of none, for the proposition that it is entitled to be paid the same rate under any MMC contracts it chooses to enter into with MCOs and PBMs that it was paid by HHSC under fee-for-service—and still is for 20% of the recipients—or that it is entitled to be paid any minimum rate under those privately negotiated contracts. At most, American Pharmacies had an "expectation based upon the anticipated continuance" of the prior law. *See Butler Weldments Corp. v. Liberty Mut. Ins. Co.*, 3 S.W.3d 654, 659 (Tex. App.—Austin 1999, no pet.). Any right or privilege it may have had to be

25

paid on a fee-for-service basis existed solely by statute, and that statutory right was modified by SB 7. Although by their nature, the fee-for-service and MMC models have different rules for participating providers, American Pharmacies maintains its right or privilege to participate in the Medicaid program following the adoption of Subchapter J.

Further, to the extent the economic losses American Pharmacies has experienced can be said to interfere with or impair its right or privilege to participate in the Medicaid program, those losses, as previously discussed, have resulted from legislative changes to the structure of the Texas Medicaid program, not from the properly implemented rules effecting those changes. Subchapter J does not regulate the reimbursement rates paid to American Pharmacies under MMC; its contracts with MCOs and PBMs do. In short, American Pharmacies has not asserted any right or privilege affected by the rules it challenges. *See* Tex. Gov't Code § 2001.038(a); *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 907 (Tex. App.—Austin 2009, no pet.) (plaintiff whose credentials met requirements of rules for issuance of non-citizen driver's license but was denied license for unknown reasons did not show that rules interfered with or impaired privilege of obtaining driver's license); *cf. State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 797 (Tex. App.—Austin 1982, writ ref'd n.r.e.) (insurance agent had standing to challenge board rule, implemented in absence of underlying statutory change, that place ceiling on insurance rate and lowered agent's commission). We therefore conclude that the trial court did not err in finding that American Pharmacies failed to allege or prove a justiciable interest, and we overrule American Pharmacies' fifth issue.[12]

---

[12] In its sixth issue, American Pharmacies argues that its pleadings were sufficient to assert a justiciable interest and Suehs's ultra vires actions. We find this issue duplicative of issues one through five and do not reach it. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled American Pharmacies' issues, we affirm the trial court's final judgment.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: July 12, 2013

27