**Motion for Rehearing Granted in Part; Memorandum Opinion of November 19, 2024 Withdrawn. Affirmed as Modified and Substitute Opinion filed March 13, 2025.**



**In The**

# Fifteenth Court of Appeals

### NO. 15-24-00051-CV

## CROWLEY INDEPENDENT SCHOOL DISTRICT, Appellant

### V.

## CARL STONEHAM, AND MIKE MORATH, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF EDUCATION OF TEXAS, Appellees

**On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court Cause No. 048-336026-22**

### SUBSTITUTE OPINION ON REHEARING

We grant Crowley Independent School District's motion for rehearing to address the new jurisdictional issue that it raises for the first time on rehearing, withdraw our opinion and judgment of November 19, 2024, and substitute the following in its place.

Appellant Crowley Independent School District (CISD) terminated teacher

Carl Stoneham's contract following an incident involving the use of force against a student. The Independent Hearing Examiner (Examiner) found that CISD sustained its burden of establishing good cause for Stoneham's termination. The CISD Board of Trustees (Board) adopted the Examiner's findings of fact and conclusions of law and voted to terminate Stoneham.

Stoneham appealed his termination to the Commissioner of Education, who found that the Examiner and the Board failed to apply the appropriate legal standard that governs whether a teacher can be subject to discipline for using physical force against a student. *See* Tex. Educ. Code § 22.0512. The Commissioner concluded that the Board's decision was arbitrary and capricious for failure to apply the proper legal standard and, alternatively, was unsupported by substantial evidence to overcome Stoneham's statutory immunity from discipline for the use of non-deadly physical force. CISD appealed the Commissioner's decision to the trial court, and the trial court affirmed the Commissioner's decision.

On appeal to this Court, CISD asserts that the trial court erred in affirming the Commissioner's decision. CISD further contends that the trial court lacked jurisdiction to consider Stoneham's claim for a declaratory judgment that CISD did not accept Stoneham's resignation, and alternatively, that the trial court erred in granting a declaratory judgment that CISD did not accept Stoneham's resignation. Because Stoneham has withdrawn his attorney's fee request on rehearing, we modify the judgment to delete the award of attorney's fees to Stoneham. We affirm the trial court's judgment as modified.

## I. BACKGROUND

### A.     The Education Code Sets Out Procedures for Contesting Teacher Contract Termination.

Chapter 21 of the Texas Education Code sets out the procedures through

2

which a teacher may contest a school board's termination decision.

After receiving notification of a proposed decision to terminate a contract, a teacher may request a hearing before a hearing examiner assigned by the Commissioner of Education. *See* Tex. Educ. Code §§ 21.251–.254. This hearing is evidentiary and resembles a trial to the court. *See id*. §§ 21.255–.256. At the conclusion of the hearing, the Examiner issues a written recommendation that includes findings of fact and conclusions of law and may include a proposal for granting relief. *Id*. § 21.257.

The school district's board of trustees then considers the recommendation of the examiner and the record of the hearing, allowing each party to present oral argument. *Id*. § 21.258. The board must then announce a decision. *Id*. § 21.259(a).

A party aggrieved by the board's decision may appeal to the Commissioner of Education, who reviews the record of the Examiner's hearing and the oral argument before the board, along with the parties' arguments. Tex. Educ. Code § 21.301(c). The Commissioner may not substitute the Commissioner's judgment for that of the board unless the board's decision is arbitrary, capricious, or unlawful, or not supported by substantial evidence. *Id*. § 21.303(b)(1). The Commissioner issues a written decision that includes findings of fact and conclusions of law. *Id*. § 21.304(a).

Either party may appeal the Commissioner's decision to a district court. Tex. Educ. Code § 21.307(a). The court "may not reverse the decision of the commissioner unless the decision was not supported by substantial evidence or unless the commissioner's conclusions of law are erroneous." *Id*. § 21.307(f).

**B.      Stoneham Uses Force Against a Student.[1]**

The facts of the case are largely undisputed. At the time of the incident in question, Stoneham—who had been an educator for 16 years—was employed as a math teacher at a CISD ninth grade campus. Every CISD employee bears responsibility for keeping a lookout for school safety, and an unidentified person in the school can be a safety risk. Students at the Crowley ninth grade center were required to show identification when asked, and it was reasonable for a teacher to ask unknown individuals to show their identification.

On September 17, 2021, just after the bell rang to start an afternoon class, Stoneham went into the classroom and encountered a young man he did not know. The young man began to walk toward Stoneham, who was in the doorway. Stoneham asked the young man for identification, but the young man—later identified as student B.K.—refused to provide it.

Stoneham did not allow the unidentified young man to leave the classroom. Another CISD employee, Courtney Billingsley, known as Coach B, also asked the young man for identification, but he refused Coach B's request as well. Stoneham sought help by sending two other students to the office to ask for help in the classroom. Stoneham also phoned the office and texted an assistant principal to get help. Before help could arrive, the young man "escalated the encounter" and "was being aggressive." The young man grabbed Stoneham's upper arms in what Stoneham described as an assault. The young man "aggressively shoved Mr. Stoneham in an attempt to exit the classroom." Coach B. stepped aside, "offering no help beyond what he had previously done in asking for [the young man's] ID." The situation developed in a matter of seconds, culminating in both Stoneham and the

---

[1] The facts recited below are taken from the findings of fact made by the hearing examiner and accepted by the Board and the Commissioner.

young man falling in a prone position on the ground.

Stoneham held the young man on the ground for approximately two minutes using the weight of his torso for control and using his left hand to pin the young man's right hand. The young man used his free hand to repeatedly punch Stoneham in the face. Other CISD employees "stood around" asking the young man to calm down, but they "did not appear to be particularly alarmed and did not adequately offer assistance to prevent harm" to the young man or Stoneham. The encounter ended when the school principal arrived and instructed Stoneham to release the young man. Stoneham did not use a chokehold on the young man.

## C.     Stoneham Challenges the Notice of Proposed Termination.

Following that incident, on November 8, 2021, Stoneham received notice from CISD that the Board of Trustees had voted to propose termination of Stoneham's 2021-22 term contract. Stoneham filed a timely notice of appeal with the Commissioner of Education, and the Commissioner appointed examiner Karen Roberts Washington to hold a hearing.

The Examiner conducted a hearing on February 9, 2022, where Stoneham and other witnesses testified. B.K., the student involved in the incident, did not testify. In addition to the facts cited above, the Examiner made several additional findings of fact, including that:

- Stoneham did not make any false statements about the event.
- Stoneham did not intentionally or knowingly treat a student or minor in a manner that adversely affected the learning, physical health, mental health, or safety of the student or minor.
- Stoneham did not intentionally, knowingly, or recklessly engage in physical mistreatment, neglect, or abuse of a student or minor in violation of Educators' Code of Ethics section 3.5.
- Stoneham did fail to maintain an appropriate professional

5

educator-student relationship and boundary based on a reasonably prudent educator standard, in violation of Educators' Code of Ethics section 3.8; 19 Tex. Admin. Code § 247.2(3)(H).

The Examiner also entered several "conclusions of law," including the following conclusions:

- When the two went to the ground and were surrounded by other personnel, Stoneham should have backed away. B.K. was no longer a danger. [Stoneham's] conduct was inconsistent with the conduct of a person of ordinary prudence under the same or similar circumstances.

- Stoneham's restraint of B.K. on the ground harmed Crowley ISD, both in the time that it took away from the educational purposes and in public perception.

- Crowley ISD sustained its burden of establishing good cause for termination of the term contract of Carl Stoneham under Texas law for termination of his contract.

Throughout the findings and conclusions, the Examiner never mentioned section 22.0512 of the Education Code, which states that a "professional employee of a school district may not be subject to disciplinary proceedings for the employee's use of physical force against a student to the extent justified" under Section 9.62 of the Texas Penal Code. Tex. Educ. Code § 22.0512(a). Section 9.62 states that the use of non-deadly force against a person is justified "(1) if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and (2) when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group." Tex. Penal Code § 9.62.

The Examiner recommended that the Board adopt her findings and conclusions and "enter an Order consistent therewith." Although the Examiner found that CISD had "sustained its burden of establishing good cause for termination," the Examiner "reminded" CISD that "good math teachers are not easy

6

to find, a single event does not have to define a person, and termination is not an exclusive remedy . . . . Perhaps another course would serve the district as well."

After receiving the Examiner's recommendation, findings of fact, and conclusions of law, the CISD Board met and heard argument from both parties. At the conclusion of the non-evidentiary hearing, the Board voted to adopt the Examiner's findings of fact and conclusions of law and terminate Stoneham's employment contract.

## D. The Commissioner Reverses Stoneham's Termination.

Stoneham appealed the Board's decision to the Commissioner of Education. The Commissioner adopted the hearing examiner's findings of fact and conclusions of law with the exception of Conclusions of Law 6 and 8.[2] The Commissioner determined both to be fact findings, and he did not adopt them.

Despite adopting the Board's fact findings almost in their entirety, the Commissioner reversed the termination. After a lengthy analysis, the Commissioner concluded that the Board's decision to terminate Stoneham's contract was arbitrary and capricious because the Board did not address whether Stoneham had immunity under section 22.0512 of the Education Code. The Commissioner faulted the

---

[2] There are two Conclusions of Law 6. The Commissioner did not adopt the second Conclusion of Law 6: "Stoneham's restraint of B.K. after they hit the ground does not meet any of the circumstances outlined in FO (Local) that justify physical restraint. While it is possible that B.K. was a stranger at the school there to do harm, neither Stoneham nor any other person were at risk of physical injury. There is no evidence that there was a weapon or other dangerous object. Stoneham was not attempting to remove B.K. in order to restore order or to impose discipline. In fact, he seems to suggest that they almost accidentally went to the ground when B.K. tried to push past. Stoneham was not protecting property from damage. Stoneham emphatically testified that he was not attempting to discipline B.K."

There are three Conclusions of Law 8. The Commissioner did not adopt the third Conclusion of Law 8: "When the two went to the ground and were surrounded by other personnel, Stoneham should have backed away. B.K. was no longer a danger. His conduct was inconsistent with the conduct of a person of ordinary prudence under the same or similar circumstances."

7

Examiner and the Board for failing to make findings of fact or conclusions of law on the issue of whether, from Stoneham's perspective, Stoneham reasonably believed that the use of force was necessary under the criteria for evaluating section 22.0512 immunity. Rather, the Examiner and the Board concluded that Stoneham's conduct was "inconsistent with the conduct of a person of ordinary prudence under the same or similar circumstances."

In the alternative, the Commissioner concluded, assuming *arguendo* that the Board impliedly addressed and rejected the immunity issue, substantial evidence did not support any implied finding that Stoneham lacked immunity under section 22.0512 of the Education Code. The Commissioner determined that Stoneham reasonably believed that the force was necessary, because "releasing an unidentified and violent individual to roam freely in school before administration responded to the situation presented a safety risk."

The Commissioner granted Stoneham's petition for review, reversed the termination, and ordered that Stoneham was entitled to reinstatement and back pay, including employment benefits from the time of his discharge.

**E.    CISD Appeals to the District Court, and Stoneham Wins Summary Judgment on his Counterclaim.**

CISD appealed the Commissioner's decision to the district court pursuant to section 21.307 of the Education Code. CISD asserted that the Examiner addressed immunity under section 22.0512 of the Education Code when she determined that Stoneham's restraint of the young man was not justified and was not objectively reasonable.

Stoneham answered and filed a counterclaim, requesting a declaratory judgment that because CISD rejected his April 13, 2022 resignation, it could not accept his resignation several months later after the Commissioner reversed the

8

Board's decision. Stoneham also sought attorney's fees under the Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem. Code § 37.009.

The district court affirmed the Commissioner's decision in all respects. The court granted summary judgment for Stoneham on his declaratory judgment claim, concluding that CISD "rejected Stoneham's attempt to submit his April 13, 2022 resignation," making that purported resignation "null and void." The district court further ordered CISD to "reinstate Stoneham and pay him back pay, salary, and benefits from the date of his termination to the date of his reinstatement." Finally, the court awarded attorney's fees and costs to Stoneham in the amount of $7,000, plus conditional appellate fees. CISD timely appealed the trial court's decision.

## ANALYSIS

In three issues CISD challenges the district court's judgment (1) affirming the Commissioner's decision reversing the Board's termination; (2) exercising jurisdiction over Stoneham's declaratory judgment counterclaim; and (3) granting declaratory judgment that CISD rejected Stoneham's attempt to submit his resignation.

## II.   The Commissioner's Decision to Reverse Stoneham's Termination

CISD argues that the Examiner "found that there is good cause for ending Stoneham's employment" with CISD, and that the Commissioner erroneously reversed the decision to end Stoneham's employment. Appellees respond that the Commissioner properly found that the Examiner and the Board failed to apply the correct legal standard, and that the Commissioner's decision applying the correct standard is supported by substantial evidence. We agree with Appellees and affirm.

### A. Standard of Review

On appeal, the focus of this Court's review, as in the district court, is on the

9

decision of the Commissioner. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000). A Commissioner's decision may only be reversed on appeal if the decision is not supported by substantial evidence or the Commissioner's conclusions of law are erroneous. Tex. Educ. Code § 21.307(f). "Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020).

An agency decision may be reversed as arbitrary and capricious, independent of whether there is substantial evidence in the record, if its decision constitutes a clear abuse of discretion. *See Dyer v. Tex. Comm'n on Envtl. Quality*, 646 S.W.3d 498, 505 (Tex. 2022) (citing Tex. Gov't Code § 2001.174). An agency's decision is arbitrary if the agency: "(1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *Pub. Util. Comm'n of Tex. v. Tex. Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021).

## B. The Relevant Inquiry

In its first issue, CISD asserts that the district court erred in affirming the Commissioner's decision because "the Examiner's fact findings provide some evidence supporting good cause for terminating Stoneham's employment." CISD argues that the Commissioner was not permitted to "substitute his judgment for the Board of Trustees" so long as the termination decision was supported by substantial evidence.

Appellees respond that this argument puts the cart before the horse. According to Appellees, the Commissioner may substitute his judgment for the Board's decision if the Board's decision was "arbitrary and capricious," irrespective of

whether there is substantial evidence in the record to support the Board's decision. Here, the Commissioner made conclusions of law that the Board's decision was arbitrary and capricious because (1) Texas Education Code Section 22.0512 is the relevant law governing whether Stoneham could be terminated for the use-of-force incident; and (2) the "Decision lacks findings of fact and conclusions of law concerning the Texas Education Code Section 22.0512 use of force issue." According to Appellees, if the Commissioner was correct about the Board's failure to apply the correct legal standard, then the Commissioner was not prohibited from substituting his judgment for that of the Board.

We agree with the Appellees. It is well settled that an agency's "decision is arbitrary if it: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *Tex. Indus. Energy Consumers*, 620 S.W.3d at 427 (internal quotation marks omitted). The Texas Education Code does not prohibit the Commissioner from substituting his judgment for that of the Board when the Board's decision is arbitrary or capricious. Tex. Educ. Code § 21.303(b)-(b)(1) ("If the board of trustees terminated a teacher's probationary, continuing, or term contract during the contract term or suspended a teacher without pay, the commissioner may not substitute the commissioner's judgment for that of the board unless . . . if the board accepted the hearing examiner's findings of fact without modification, the decision is arbitrary, capricious, or unlawful or is not supported by substantial evidence."). In other words, the Board's "consideration of a non-statutory standard" would amount to an "arbitrary and capricious action requiring reversal." *Pub. Util. Comm'n of Texas v. S. Plains Elec. Co-op., Inc.*, 635 S.W.2d 954, 957 (Tex. App.—Austin, 1982 writ refused n.r.e.). Accordingly, we first consider whether the Commissioner erred in concluding that

the Board failed to apply the correct legal standard in terminating Stoneham's contract.

**1. Review of the Commissioner's Conclusion that the Board's Decision Was Arbitrary and Capricious for Failure to Apply Proper Law**

It is undisputed that Texas Education Code Section 22.0512 governs whether the Board could terminate Stoneham based on the use-of-force incident. That provision of the Code specifically vests "[a] professional employee of a school district" with immunity from "disciplinary proceedings for the employee's use of physical force against a student to the extent justified under Section 9.62" of the Texas Penal Code. *See* Tex. Educ. Code § 22.0512(a). Section 9.62, in turn, provides that the "use of force, but not deadly force, against a person is justified: (1) if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and (2) when and to the degree the actor reasonably believes the force is necessary to further the special purpose or to maintain discipline in a group." Tex. Penal Code § 9.62.

"Under § 22.0512, the district has the burden to prove that an educator did not have an objectively reasonable belief that force was necessary to maintain control of a group or to compel obedience to a proper command." *Edinburg Consol. Indep. Sch. Dist. v. Villarreal*, No. 13-18-00408-CV, 2020 WL 1857558, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 9, 2020, pet. denied) (mem. op.) (citations omitted). Although reasonable belief involves an objective—not subjective— standard defined as a belief that would be held by an ordinary and prudent person in the same circumstances as the actor, the acts of the teacher in using force must be viewed from the teacher's perspective. *Dallas Indep. Sch. Dist. v. Peters*, No. 05-14-00759-CV, 2015 WL 8732420, at *5 (Tex. App.—Dallas Dec. 14, 2015, pet. denied) (mem. op.); Tex. Penal Code § 1.07(42).

12

Significantly, on appeal, CISD does not challenge the Commissioner's conclusion that "in a termination or nonrenewal case where there is a use of force issue under Texas Education Code § 22.0512, the recommendation and the board decision are required to have findings of fact and conclusions of law concerning the Texas Education Code § 22.0512 use of force issue." Nor does CISD challenge the conclusion that where a teacher has immunity under Section 22.0512, a district court cannot "take disciplinary action against the employee for the use of force because it believes that its policies or a rule of the State Board for Education Certification prohibit the use of force that the professional employee reasonably believes is necessary." Instead, CISD appears to challenge the Commissioner's conclusion that "[b]ecause the Decision to terminate Petitioner's contract lacks findings of fact and conclusions of law concerning the Texas Education Code § 22.0512 use of force issue, it is arbitrary and capricious."

The Commissioner's conclusion is not erroneous. The Examiner's findings of fact and conclusions of law—which the Board adopted—are devoid of a single citation to Texas Education Code Section 22.0512. The Examiner did not quote any language from Section 22.0512 or Penal Code Section 9.62. Nor did the Examiner expressly consider what Stoneham's "special purpose" was with respect to Section 22.0512 or whether Stoneham had an objectively reasonable belief that force was necessary to maintain control of a group or to compel obedience to *a proper command*.

Instead, the Examiner invoked irrelevant factors that have nothing to do with Section 22.0512. The Examiner applied Section 21.211 of the Texas Education Code, which provides that a district may terminate the contract with a teacher for "good cause as determined by the board." Tex. Educ. Code § 21.211. Good cause is "defined as the employee's failure to perform the duties in the scope of employment

that a person of ordinary prudence would have done under the same or similar circumstances." *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 580 (Tex. App.—Houston [1st Dist.] 1992, no writ). The Examiner concluded that CISD had established "good cause for termination," because Stoneham's conduct was "inconsistent with the conduct of a person of ordinary prudence under the same or similar circumstances."

CISD invokes this latter conclusion—applying Section 21.211's standard—as proof that the Examiner actually made findings of fact and conclusions of law concerning Section 22.0512. We disagree that application of the standard imposed by Section 21.211 can be substituted where application of the Section 22.0512 standard is appropriate. After all, the "primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 253 (Tex. 2023). This Court ascertains legislative intent by considering "at all times" both the "old law" and "the remedy." Tex. Gov't Code § 312.005. Courts do not "lightly presume that the Legislature may have done a useless act." *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 581 (Tex. 2022).

Here, Texas Education Code Section 21.211's "good cause" provision supplies the default standard for teacher contract terminations, and it predates Section 22.0512. Act of May 29, 1995, 74th Leg., ch. 260, § 1, 1995 Tex. Gen. Laws 2270. The Legislature enacted Section 22.0512 later—in 2003—to change the law governing teacher terminations for nondeadly use of force. Act of June 2, 2003, 78th Leg., ch. 1197, § 1, 2003 Tex. Gen. Laws 3405. Were that not so, Section 22.0512 would have been a useless act.

Not surprisingly, Section 22.0512 uses different language not found in Section 21.211. Section 22.0512 mandates use of the standard set out in Texas Penal Code

14

Section 9.62. *See* Tex. Educ. Code § 22.0512(a). Section 9.62 states that the use of nondeadly force is justified "when and to the degree the actor reasonably believes the force is necessary *to further the special purpose* or to maintain discipline in a group." Tex. Penal Code § 9.62 (emphasis added). A "reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(42). All parties acknowledge that, taken together, Section 22.0512 requires CISD to prove "that an educator did not have an objectively reasonable belief that force was necessary . . . to compel obedience to a proper command." *See Villarreal*, 2020 WL 1857558, at *6 (citations omitted).

Stoneham's instruction to show an ID was a "proper command" that the Examiner should have considered under a proper Section 22.0512 analysis. The Examiner expressly found that every district employee has the "responsibility of keeping a lookout for school safety," and an "unidentified person in the school can be a safety risk." The Examiner further found that it was "reasonable" for a CISD employee to "ask a student for their ID"; students are "required to show ID upon request"; students are "expected to be compliant to teacher directives"; "Stoneham asked B.K. for his student ID"; and "B.K. refused to provide it." As the Examiner explained: "On September 17, 2021, Stoneham asked B.K. for an ID and insisted on compliance. These actions were reasonable. It is important to keep strangers from roaming the halls of the schools."

The Examiner, however, made no findings or conclusions on whether Stoneham had an objectively reasonable belief that force *was necessary to compel obedience* to this proper command to show identification. Instead, Conclusion 8 states that at the point that Stoneham and the student were "on the ground" and "surrounded by other personnel," Stoneham "should have backed away" because "B.K. was no longer a danger. [Stoneham's] conduct was inconsistent with the

15

conduct of a person of ordinary prudence under the same or similar circumstances." Even if this were a correct application of Section 21.211's good cause standard, it is not a proper application of the immunity test in Section 22.0512. Section 22.0512 asks whether *Stoneham* had an objectively reasonable belief that force was necessary to compel obedience to the command to show ID. The Examiner did not ask that question, nor did she answer it.[3] Consequently, CISD did not procure the findings and conclusions required to overcome Stoneham's immunity.

Many of the Examiner's other conclusions further confirm that the Examiner did not apply Section 22.0512. The Examiner expressly concluded that Stoneham's restraint of B.K. contravened CISD's internal policies and "harmed Crowley ISD, both in the time that it took away from educational purposes and in public perception." Such factors may be relevant to a Section 21.211 "good cause" analysis. *See Edinburg Consol. Indep. Sch. Dist. v. Esparza*, 603 S.W.3d 468, 482–83 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) (finding sufficient evidence of "good cause" for principal's termination, where principal's violation of ECISD policy resulted in "disruption," "distraction," and negative media attention.). Even so, they are irrelevant to Section 22.0512's immunity test, which asks whether Stoneham had a reasonable belief that his use of force was necessary to compel compliance with a proper command, like the command to show ID. Thus, the Commissioner properly concluded that the Board's termination decision was arbitrary and capricious due to the failure to make "findings and conclusions of law concerning the Texas Education Code Section 22.0512 use of force issue."

---

[3] This case is distinguishable from *Villarreal*, 2020 WL 1857558, at *7. The Examiner in that case expressly cited Texas Education Code Section 22.0512, concluding that the educator did not have an objectively reasonable belief that "the force used was *necessary to enforce compliance with proper commands* and to maintain discipline in the classroom." *Id*. at *3 n.6 (emphasis added). No such citations or conclusions are present here.

## 2. Review of the Commissioner's Decision Applying Proper Law

Because the Commissioner correctly concluded that the Board had failed to apply the correct legal standard, the Commissioner was free to apply the proper law and substitute his judgment for that of the Board. *See* Tex. Educ. Code § 21.303(b)(1). The Commissioner's decision is now the focus of review. The question is not, as CISD poses, whether there "is some evidence to support the Independent Hearing Examiner's determination." Instead, it is whether there is substantial evidence to support the Commissioner's decision. *See Davis*, 34 S.W.3d at 562. Substantial evidence review is a reasonableness or a rational basis test. *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994). We presume that the "findings, inferences, conclusions, and decisions" of the Commissioner are supported by substantial evidence, and the burden is on CISD to prove otherwise. *Tex. Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

Here, the Commissioner ultimately concluded that "Petitioner's use of force is privileged under Texas Education Code Section 22.0512." Applying the appropriate statutory criteria, the Commissioner reasoned that under Section 22.0512 (which incorporates Texas Penal Code Section 9.62), a teacher is privileged to use force that the teacher, from his perspective, reasonably believes is necessary to enforce a proper command. The Commissioner then adopted the Examiner's findings that an unidentified male entered Stoneham's classroom, and Stoneham appropriately asked him to show his ID. The unidentified male refused.

Rather than complying, the unidentified young man assaulted Stoneham. After they both fell to the ground, the unidentified young male punched Stoneham repeatedly in the face. Stoneham restrained him for approximately two minutes while other school employees stood by and offered no assistance. On these facts, the

17

Commissioner concluded that Stoneham acted reasonably during the restraint because, from his perspective, he reasonably believed that the use of force was necessary to produce compliance with the command to produce ID and to fulfill the special purpose of keeping the campus safe from an unknown and aggressive individual. The Commissioner further concluded that it was reasonable for Stoneham to believe that the unidentified young man, who refused to provide his ID and had gotten physically aggressive with Stoneham, posed a risk to Stoneham and others. CISD has not proven that the Commissioner's findings, inferences, conclusions, and decisions are not supported by substantial evidence. *See Tex. Health Facilities Comm'n, Inc*., 665 S.W.2d at 452.

Although CISD does not acknowledge the proper standard of review, CISD makes a number of general attacks on the Commissioner's decision that could be construed as substantial-evidence challenges. First, CISD faults the Commissioner for declining to adopt the Examiner's contrary "Conclusion of Law 8," where the Commissioner determined that "when the two went to the ground and were surrounded by other personnel, Stoneham should have backed away. B.K. was no longer a danger. His conduct was inconsistent with the conduct of a person of ordinary prudence under the same or similar circumstances." The Commissioner's decision on this point was not erroneous. The legal test was not whether Stoneham's "conduct was inconsistent with the conduct of a person of ordinary prudence under the same or similar circumstances." It was whether Stoneham did not have an "objectively reasonable belief that force was necessary . . . to compel obedience to a proper command." *Villarreal*, 2020 WL 1857558, at *6.

The facts enmeshed in Conclusion 8 were also contradicted by many findings in the record, including the Commissioner's findings that "Before help could come, B.K. escalated the encounter. B.K. was aggressive"; that B.K. repeatedly punched

Stoneham in the face while Stoneham had him restrained; that the "Coach stepped aside offering no help beyond what he had previously done in asking for B.K.'s ID"; and that other district employees "did not adequately offer assistance to prevent harm to the student or teacher." In sum, substantial evidence supports the Commissioner's decision to decline to adopt Conclusion 8 and to reach a contrary result.

Next, CISD faults the Commissioner for not adopting the Examiner's reasoning that Stoneham's two-minute restraint of B.K. was unreasonable, despite her findings that much of Stoneham's conduct prior to those two minutes was reasonable. CISD does not dispute the Examiner's findings—adopted by the Commissioner—that it was reasonable for Stoneham to request that the student show his ID when Stoneham discovered the student in his classroom; that student became physically aggressive with Stoneham before Stoneham restrained him; that Stoneham's claim of self-defense was credible up to the point that he had the student pinned on the ground; and that the student repeatedly punched Stoneham in the face during the restraint. According to CISD, the Commissioner was required to credit the Examiner's reasoning that Stoneham's restraint was not reasonable once they were "surrounded by other adults" after the unidentified male assaulted Stoneham.

CISD again asks the wrong question. The test is not whether Stoneham's actions—divorced from the context of the entire altercation—were "reasonable." The test is whether Stoneham had a reasonable belief that the use of force was necessary to compel obedience with the request to show ID. While reasonable belief involves an objective—not subjective—standard defined as a belief that would be held by an ordinary and prudent person in the same circumstances as the actor, the acts of the teacher in using force must be viewed from the teacher's perspective. *Peters*, 2015 WL 8732420, at *5; Tex. Penal Code § 1.07(42). Thus, the Commissioner was required to take the event—which lasted mere minutes—as a

19

whole, so as to view the event from the teacher's perspective. Indeed, in *Villarreal*, the court held that the Section 22.0512 analysis requires consideration of the "totality of the circumstances." *Villarreal*, 2020 WL 1857558, at *7.

From this vantagepoint, substantial evidence supports the Commissioner's determination that Stoneham had a reasonable belief that force was necessary to compel obedience to the proper command and keep himself and others safe from violence. The Commissioner determined that backing away from B.K. could create danger by giving B.K. more space to maneuver and punch. B.K. was unexplainably aggressive and had defied a simple and proper command to show a school ID. Stoneham did not know that B.K. was a student, and B.K.'s aggressive behavior indicated that he should not be allowed to roam freely. Given that B.K. repeatedly punched Stoneham, and other school employees stood there and watched without any particular alarm, it was reasonable for the Commissioner to conclude that Stoneham reasonably believed that he could not back away without potentially putting himself in more danger. It was also reasonable for Stoneham to believe that the other school employees would not help him if he did back away. The Examiner found, after all, that those employees had stood by during an assault without rendering aid. The Commissioner was not required to adopt the Examiner's contrary conclusion that "a reasonable person would conclude that before Stoneham held B.K. on the ground, neither Stoneham nor any other person were at risk of physical injury."

Third, CISD complains that the "evidence does not conclusively establish that the student was a danger to other students." The test here is not whether the Commissioner's decision is supported by conclusive evidence. Substantial evidence supports the Commissioner's determination—based upon the Examiner's findings of fact regarding B.K.'s aggression and assault—that Stoneham had a reasonable

belief that use of force was necessary to fulfill the special purpose of protecting other students from danger. That is enough to affirm. We overrule CISD's first issue.

## III. Declaratory Judgment

CISD's motion for rehearing challenges the trial court's jurisdiction to render a declaratory judgment that CISD rejected Stoneham's attempt to submit his April 13, 2022 resignation. CISD also argues that the declaratory judgment was erroneous. We consider these issues in turn.

### A. Background

Stoneham submitted his resignation April 13, 2022, the day before the Board terminated Stoneham's employment contract. Stoneham's attorney forwarded Stoneham's resignation letter to CISD's attorney on April 13, 2022. The same day, CISD's attorney responded, "The District does not accept Mr. Stoneham's resignation and will be moving forward with the Board Termination Hearing tomorrow evening." The Board moved forward with the termination hearing and voted to terminate Stoneham's employment contract on April 14, 2022. On June 15, 2022, the Commissioner reversed the Board's termination decision, reinstating Stoneham. On August 17, 2022, four months after Stoneham submitted his resignation and was terminated, the superintendent of CISD sent a letter to Stoneham purporting to accept his resignation.

In the district court, Stoneham filed a counterclaim seeking a declaration that CISD rejected Stoneham's resignation at the time the Board terminated his employment. Stoneham subsequently filed a motion for summary judgment on his declaratory judgment claim. As summary judgment proof, Stoneham attached a copy of his resignation letter dated April 13, 2022, an email forwarding his resignation to CISD's attorney requesting that the resignation be presented to the CISD

21

superintendent, and an email from CISD's attorney stating that the District did not accept the resignation. Stoneham also attached the April 14, 2022 notice from CISD that his employment contract had been terminated and the CISD superintendent's "acceptance of resignation" dated August 17, 2022.

With this summary judgment proof the district court rendered a declaratory judgment declaring that CISD rejected Stoneham's attempt to submit his April 13, 2022 resignation and therefore the purported resignation was null and void.

## B.    Jurisdiction

On motion for rehearing, CISD alleges that Stoneham's declaratory judgment counterclaim is barred by governmental immunity because the Uniform Declaratory Judgments Act does not waive CISD's governmental immunity. Because this issue impacts the court's jurisdiction we consider it even though it was raised for the first time on motion for rehearing. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023) (noting "fundamental rule" that a "court may not reach the merits if it finds a single valid basis to defeat jurisdiction").

The doctrine of governmental immunity protects political subdivisions of the State, including school districts. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). A political subdivision enjoys governmental immunity from suit to the extent that the Legislature has not abrogated that immunity. *Id*. Generally, the UDJA does not alter a trial court's jurisdiction. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Rather, the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power[.]" *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

Governmental immunity serves to "prevent governmental paralysis." *Hughes v. Tom Green Cnty.*, 573 S.W.3d 212, 218 (Tex. 2019). When it exists, governmental immunity from suit may be waived only by clear and unambiguous statutory language. *See* Tex. Gov't Code § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). Despite this deference to the Legislature regarding waiver of immunity, the judicial branch retains the authority and responsibility to determine whether immunity exists in the first place, and to define its scope. *Reata Construction Co. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006). "Therefore, it remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances" governmental immunity "exists in the first instance." *Id.*

The Texas Supreme Court demarcated important limits on the doctrine in *Reata*, holding that "where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id.* at 376–77. That is because principles of immunity assume "that the government is an unwilling litigant, haled into court by a private plaintiff." *Hughes*, 573 S.W.3d at 218. Such principles "do not apply equally when the government invokes the jurisdiction of the courts to assert its own claims." *Id.*

Invoking the Court's "duty to afford fundamental fairness in the administration of justice to all litigants," *Hughes* extended *Reata*'s limitations on the contours of governmental immunity to cases like this one, where the government entity's claim for affirmative relief does not seek monetary damages. *See Hughes*,

23

573 S.W.3d at 219. Upon initiating litigation, a governmental entity "participate[s] in the litigation process as an ordinary litigant" without the benefit of governmental immunity when an adverse party asserts a claim that falls within the parameters set by *Reata* and *Hughes*. *Id.* (quoting *City of Dallas v. Albert*, 354 S.W.3d 368, 377 (Tex. 2011)).

Stoneham's counterclaim against CISD falls within those parameters—it is "germane to, connected with, and properly defensive to" CISD's suit for judicial review of the Commissioner's decision. *Reata*, 197 S.W.3d at 377. A counterclaim is "germane to" a governmental entity's claim when both are predicated on the same question. *Albert*, 354 S.W.3d at 375 (holding that the city had no governmental immunity against police officers' claims against city because both the officers' claims and the city's counterclaim were "based on the question of pay for the Officers' employment"). Here, Stoneham's counterclaim and CISD's own suit for judicial review involved the same question of whether Stoneham was entitled to continued employment by CISD.

Stoneham's counterclaim is also "properly defensive to" CISD's claim because it would inferentially rebut the CISD's position that Stoneham was not entitled to continued employment. *See id.*; *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 430 (Tex. 2005) ("An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts."); *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 477 (Tex. 1978) ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."). By initiating the judicial review procedure to challenge the Commissioner's decision reinstating Stoneham, CISD necessarily called into question Stoneham's continued employment. Stoneham's counterclaim seeking a declaration that CISD could not accept his resignation several months after rejecting

it rebutted CISD's theory that it was entitled to stop employing Stoneham.

We conclude that CISD's suit for judicial review implicates the same policy principles and law that defined the boundaries of governmental immunity in *Reata* and *Hughes*. *See Hughes*, 573 S.W.3d at 218–19. CISD here "cannot complain about the burdens of litigation in this context because it has voluntarily undertaken them by affirmatively asserting its own claims." *Id.* at 219; *see also Reata*, 197 S.W.3d at 375–76 ("[W]e believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it."). Accordingly, we hold that the trial court had jurisdiction[4] over Stoneham's counterclaim and overrule Stoneham's issue on rehearing.

### C.    Analysis

Because the trial court had jurisdiction over Stoneham's counterclaim, we proceed to review the trial court's judgment. We review declaratory judgments under the same standard as other judgments or decrees. Tex. Civ. Prac. & Rem. Code § 37.010; *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). Here, because the district court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment." *Hawkins*, 214 S.W.3d at 719.

We review the judgment de novo to determine whether Stoneham, the movant,

---

[4] We find no basis for concluding that Stoneham failed to exhaust administrative remedies for this counterclaim, as exhaustion is required only for "complaints that the Legislature has authorized the Commissioner to resolve . . . ." *McIntyre v. El Paso Indep. Sch. Dist.*, 499 S.W.3d 820, 823 (Tex. 2016) (quoting *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 546 (Tex. 2016)). The Commissioner is authorize to resolve a claim that a person is aggrieved by "the school laws of this state," Tex. Educ. Code § 7.057, but no party has identified a school law that controls the issue whether CISD could legally accept Stoneham's offer after previously rejecting that offer.

showed that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Austin Tr. Co. as Tr. of Bob & Elizabeth Lanier Descendants Trusts for Robert Clayton Lanier, Jr. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023). We take as true all evidence favorable to the nonmovant and resolve reasonable inferences in the nonmovant's favor. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). If the trial court does not state the grounds upon which it grants summary judgment, an appellate court will affirm the judgment if any of the grounds set forth by the movant is meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

CISD contends that the trial court erred by concluding that CISD rejected Stoneham's April 13, 2022 offer of resignation. CISD asserts that the Education Code's provisions and CISD's policies govern Stoneham's resignation, not general Texas contract law. According to CISD, its attorney's notice to Stoneham that the District did not accept his resignation had no legal effect because the Board was prohibited from acting under the Open Meetings Act. *See* Tex. Gov't Code § 551.043 (requiring that any agenda item that will be considered at a meeting be publicly posted at least 72 hours before the meeting).

A teacher employed under a term contract may resign and leave the employment of the school district at the end of the school year without penalty by filing a resignation with the school board or the board's designee not later than the 45th day before the first day of instruction of the following school year. Tex. Educ. Code § 21.210(a). If a teacher chooses to resign before the end of a term, the teacher may resign, with the consent of the board or the board's designee, at any other time. *Id*. § 21.210(b). Stoneham did not submit an end-of-contract resignation. Rather, Stoneham's offer was to resign effective April 13, 2022, in the middle of the school year. Consequently, Stoneham's attempted resignation could not become effective

without school district acceptance.

An agreement to rescind a teacher's employment contract requires the elements of "an offer, an acceptance, and consideration." *Cantu v. Cent. Educ. Agency*, 884 S.W.2d 565, 566 (Tex. App.— Austin 1994, no pet.). Although Texas Education Code section 21.210 modifies the way a school board may accept a teacher's resignation, it does not purport to supplant the common law with respect to either making or rejecting an offer to resign. Therefore, Texas common law governs the question whether CISD's April 2022 rejection of Stoneham's offer to resign was legally effective. *See Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) ("A statute that deprives a person of a common-law right will not be extended beyond its plain meaning or applied to cases not clearly within its purview. Abrogating common-law claims is disfavored and requires a clear repugnance between the common law and statutory causes of action.") (internal quotations and citation omitted); *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969) ("While Texas follows the rule that statutes in derogation of the common law are not to be strictly construed, it is recognized that if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.").

On the very day that Stoneham submitted his resignation, the District's counsel informed Stoneham that the District did not accept his resignation. And the following day, CISD terminated Stoneham. Either of these actions constituted a rejection of Stoneham's offer to resign. Having rejected Stoneham's resignation offer, CISD was not free to accept it following the Commissioner's reinstatement decision. *Figueroa v. Davis*, 318 S.W.3d 53, 68–69 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating that, "[u]nder contract principles, once an offer is rejected, it

27

is terminated, and the rejecting party cannot thereafter accept it"); *see also Conglomerate Gas II, L.P. v. Gibb*, No. 02-14-00119-CV, 2015 WL 6081919, at \*8 (Tex. App.—Fort Worth Oct. 15, 2015, pet. denied); *Legal Sec. Life Ins. Co. v. Ward*, 373 S.W.2d 693, 698 (Tex. Civ. App.—Austin 1963, no writ).

CISD responds that its attorney's April 13 actions could not have constituted a rejection of Stoneham's offer to resign because the Texas Government Code required that any agenda item be publicly posted at least 72 hours before the meeting. According to CISD, the Open Meetings Act prohibited it from considering whether to reject Stoneham's resignation the day after he offered it, so CISD's actions cannot constitute a rejection of the resignation offer.

We disagree. Even if CISD violated the Open Meetings Act by rejecting Stoneham's resignation too soon, CISD cites no authority that would make CISD's rejection void. We overrule CISD's second issue.

## IV.   Attorney's Fees

On original submission, in its third issue, CISD challenged the legal and factual sufficiency of the evidence to support the trial court's award of attorney's fees. In response to CISD's motion for rehearing asserting sovereign immunity on Stoneham's counterclaim, Stoneham withdrew his claim for attorney's fees. Therefore, we need not address CISD's challenge to the trial court's award of attorney's fees.

### CONCLUSION

We modify the judgment of the trial court to delete the award of attorney's fees to Stoneham. As modified, we affirm the judgment of the trial court.

28

/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.